AGNES FAGAN et al., Respondents, v. PATHE INDUSTRIES, INC., et al., Appellants-Respondents, and DIESEL ELECTRIC CO., INC., Appellant.

First Department, March 3, 1949.

*William E. Lyons* of counsel (*Cohen & McGuirk,* attorneys), for Pathe Industries, Inc., and Pathe Laboratories, Inc., appellants-respondents.

*O. A. Thompson* of counsel (*Galli & Locker,* attorneys), for MacArthur Concrete Pile Corporation, appellant-respondent.

*Norman M. Behr* of counsel (*Skutch & Burton,* attorneys), for Diesel Electric Co., Inc., appellant.

*Joseph H. Robins* of counsel (*Abraham I. Simon,* attorney), for Agnes Fagan, respondent.

*David Sallovitz* for Helenia Realty Corporation, respondent.

VAN VOORHIS, J. These were originally two actions in behalf of each plaintiff which were consolidated. Plaintiff Agnes Fagan owns 122 East 107th Street and plaintiff Helenia Realty Corporation (hereinafter called Helenia) owns No. 120. The action arises out of work connected with the laying of a foundation for the construction of a building by defendants Pathe Industries, Inc., and Pathe Laboratories, Inc., on a plot of land on East 107th Street immediately west of No. 120 and extending to Park Avenue, being 230 by 100 feet in dimensions. The defendant Pathe Industries, Inc., is the owner and Pathe Laboratories, Inc., acted as agent, but the record indicates that there is no need to distinguish between them, and that for the purposes of this suit they may be regarded as one, and said interest is hereinafter referred to as Pathe. The buildings of plaintiffs at Nos. 122 and 120 are of brick construction, similar in nature, having been built about 1881, on wooden piers extending down into mushy soil for a distance of about 12 feet.

Pathe contracted with Diesel Electric Co., Inc. (hereinafter called Diesel) as general contractor, and Diesel is made responsible under said contract for the general management of the building operation. The other contractors were not strictly subcontractors, inasmuch as they contracted directly with Pathe, but in each case subject to Diesel's general management with full directing authority over the execution of the separate contracts.

The first operation, after the demolition of the buildings on Pathe's land, consisted in excavating work, which was performed by a contractor not a party to this action. The excavation extended to a depth of more than 10 feet and generally about 15 feet below the curb level throughout the entire area. The owner, Pathe, is chargeable with a nondelegable duty to comply with section C26–385.0 of the Administrative

Code of the City of New York (*Rosenstock* v. *Laue,* 140 App. Div. 467, 470), providing as follows: " a. *Excavations more than ten feet deep.*— Whenever an excavation is carried to a depth of more than ten feet below the curb, the person who causes such excavation to be made shall, * * * at all times and at his own expense, preserve and protect from injury any structure the safety of which may be affected by such part of the excavation as extends more than ten feet below the curb, and such person shall support the adjoining structure by proper foundations, whether or not such structure is more than ten feet below the curb. * * * ''

Section C26–384.0 of the Administrative Code reads as follows: " *Excavations affecting adjoining property.*—a. *Temporary support of adjoining property.*— Any person causing any excavation to be made shall provide such sheet piling and bracing as may be necessary to prevent the earth of adjoining property from caving in before permanent supports have been provided for the sides of such excavation.''

The general contractor also, in Diesel's position, is now held responsible for the discharge of this duty (*Columbia Machine Works* v. *Long Island R. R. Co.,* 267 App. Div. 582).

Defendant MacArthur Concrete Pile Corporation (hereinafter called MacArthur) had the contract for the driving of piles 20 to 50 feet into the earth to furnish support for the proposed building. One pile was placed in about every 30 square feet of land area. Over 690 of these piles were driven, the greater number consisting of hollow cylinders 12 to 14 inches in diameter, with a solid mandrel in the center, driven by a piledriver. When they reached a distance of from 20 to 30 feet from Helenia's house (No. 120 East 107th Street) small piles were used, being pipe of a diameter of 8–10 inches. Cement was poured down the 12–14-inch cylinders, after pulling out the mandrel and after pumping out water and mud which found their way into them.

The houses of plaintiffs were severly cracked and shaken by these operations. There were separations between the side walls and shifting of the entire structures so as to throw windows, doors and chimneys out of alignment; plaster throughout the buildings was broken and removed. As the piles were driven, the concussion was so great that it caused the houses to shake so as to be felt by persons standing on the floors, and to cause pictures on the walls to swing.

Plaintiffs called as a witness Erwin Wolfson, vice-president and superintendent of Diesel, and through him and Mr. and

Mrs. Fagan and one Max Hahn, an officer of Helenia, laid the foundation for expert testimony by one Henry L. Shadd, a professional engineer. After describing the damage which he observed, Shadd testified that although this damage had not occurred to any substantial extent by September, 1946, when the excavation was completed, it rapidly progressed during the driving of the piles. He expressed his opinion, based on a hypothetical question, that the damage to these two buildings was caused by " Soil erosion and disturbance of the sub-soil under the footings of these two buildings." By " soil erosion " he said he meant " falling away of the soil under the building, or a loss of what we call lateral support." This resulted in a sinking of the superstructures. Voids were created in the subsoil. " The sub-soil eroded," he stated, " that is to say, it moved away from under these two buildings into the excavation or the portions of the excavation abutting these two buildings. That is soil erosion. In addition to that, the vibration of driving these piles or pipe, naturally added to that eroding condition." He testified that the action of the hydraulic hammer on the piles set up soil quakes or vibrations of the soil: " The soil sets up a movement or quake which is transmitted to surrounding structures." Shadd's testimony continued: " Q. I would like to ask you how these voids or open spaces are created? A. The voids are created by reason of the excavation abutting these foundations, the foundations of these buildings, and taking away the lateral support. Then, when this soil quake is set up, it causes the already weakened earth which was loosened by the excavation — it causes that to erode or slide, creating these voids."

Defendants Pathe and Diesel assert that they cannot be held liable by reason of any excavation in violation of the Administrative Code, for the reason that no damage to the structures was noticed until after the pile-driving began. A question of fact was created regarding the cause and effect, however, by the testimony of Shadd which has just been referred to. This is in line with the holding in *Bernheimer* v. *Kilpatrick* (53 Hun 316, affd. 127 N. Y. 672) which involved what is now the same section of the Administrative Code. There the point was made that no direct connection had been established between the damage caused to the plaintiff's house and the construction of defendant's building, but the court said (p. 320): " It was impossible to produce witnesses who could swear that they had seen the excavation, and had seen that, as a result of the excava-

tion, the foundation of the adjoining house settled and cracks appeared. We think that it is a reasonable conclusion that the jury might very well draw from showing that the house had been erected for a number of years, that it stood without settling; that an excavation to an immense depth was made alongside of it and very shortly the wall began to crack and the house perceptibly settled towards the excavation. It hardly seems necessary to have any more definite proof in order to justify a finding of a connection between the excavation and the settlement of the house in question.''

It was a jury question whether the excavation in this instance, in violation of the Administrative Code, weakened the foundation of these structures and made them vulnerable to the damage caused by the pile-driving.

Wolfson, superintendent of Diesel, did express an opinion that the damage to these buildings would have occurred as a result of the pile-driving whether there had been an excavation or not, although he admitted that the excavation prior to the driving of the piles, plus the driving of the piles, endangered the buildings. His opinion, even if regarded as against the plaintiffs on this point, was not conclusive, and Shadd's opinion based on facts in evidence that the excavation was the thing which caused the pile-driving to get in its disastrous effect, is sufficient to sustain the jury's finding of liability against Pathe and Diesel.

The question of MacArthur's liability is less clear. A theory of plaintiffs is that inasmuch as the soil quakes from the pile-driving were diminished when MacArthur changed from the 12–14-inch cylinders to the 8–10-inch pipe on approaching within a distance of between 20 to 30 feet from plaintiffs' structures, this established negligence in having used the larger cylinders with the mandrels. Plaintiffs did not complete their proofs on that point, however, inasmuch as there is no evidence concerning what was standard practice, or whether the smaller 8–10-inch pipe, if used throughout, would have been adequate to supply a foundation for the building to be erected. In blasting cases, it is well established that damage to nearby property resulting from vibration alone is not enough to create liability, unless the blasting has been negligently performed — for example, as a result of the use of excessive charges of dynamite, when a larger number of smaller blasts would have been sufficed. (*Booth* v. *Rome, Watertown & Ogdensburg Terminal R. R. Co.,* 140 N. Y. 267.) The same principle has been applied to pile-driving (*Petillo* v. *Kennedy & Smith, Inc.,* 263 App. Div.

821), wherein the Second Department said: "The proof established defendant's negligence, particularly that adduced from the defendant's engineer in respect of the manner in which the sheeting and piling were driven. That portion of the work, according to that proof, could have been done with the use of less power with little or no vibration, even though more slowly. No steps were taken to correct the manner of doing the work even after notice of the damage being done, despite the proximity of the plaintiffs' building to the place where the defendant was working; therefore, a finding of negligence was justified."

This bears a marked resemblance to the present case, although there appears to have been more evidence in the *Petillo* case (*supra*) than in this record respecting what was suitable or customary practice. The charge of the trial court in the instant case did not submit that theory specifically to the jury.

Plaintiffs have a theory of negligence, however, which was established by the evidence on which MacArthur was held, viz., that MacArthur knew or should have known of the circumstance that Pathe and Diesel had violated the sections of the Administrative Code regarding the shoring and protection of abutting property against damage resulting from excavation, that this had created a potentially dangerous condition in connection with the performance of this work on account of which plaintiffs' buildings were predisposed to injury from even ordinary pile-driving, and that MacArthur should not in the exercise of reasonable care have proceeded with the pile-driving under those circumstances. It was within the province of the jury to find MacArthur chargeable with notice that plaintiffs' abutting structures were thus vulnerable to the effects of the pile-driving, due to the fact that they had not been braced and protected. This is not imposing any obligation upon MacArthur to comply with the Administrative Code in these respects; it is simply holding that it was open to the jury to determine that the exercise of reasonable care would have restrained MacArthur from proceeding with pile-driving, until a situation which the Administrative Code recognized as potentially dangerous had been corrected by those whose statutory duty it was to do so. The jury could find, as they have found, that there was a causal connection between the disastrous effects of the pile-driving and the previous failure of Pathe and Diesel to brace and protect the abutting property, and that this was something which MacArthur ought to have foreseen under the principles of common-law negligence.

In *Newell* v. *Woolfolk* (91 Hun 211, 212) it was said in the opinion: " The defendants' liability, therefore, depends upon the degree of care exercised, and this was to be determined by the danger to the adjoining property that was reasonably to be anticipated from the character of the work being carried on."

The jury in the instant case were instructed that they were to decide whether the defendants failed to take proper precautions to protect adjacent properties, and performed the work in a negligent manner. The jury were also told that they were to pass upon whether, as a result of the excavation and pile-driving, the subsoil foundation supports on plaintiffs' properties were weakened and shifted, and their properties seriously damaged. This is an application of the rule that the risk to be foreseen defines the duty to be obeyed, in deciding what are the requisites of reasonable care under the circumstances of the particular case (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339).

Diesel is also liable for negligence on that theory, on account of its supervisory duties under its contract with Pathe. Diesel even put cables through the walls of plaintiffs' buildings in order to hold them together when the pile-driving began, the shocks were so severe.

The damages awarded are excessive. The building values of the 1946–47 assessments are $3,300 for No. 120, and $1,800 for No. 122 East 107th Street. The jury's verdict of $9,000 for No. 120 and $8,000 for No. 122 are based on plainly erroneous testimony of plaintiffs' expert, Henry L. Shadd, in which he testified to these amounts at folios 708–709. It does not appear how he arrived at these figures. Agnes Fagan, who owned both properties in 1945, gave an option to sell both of them for a total price of $11,000, which was $6,000 less than the amount of the verdicts, to say nothing of the land value which was included therein. Helenia took title to No. 120 in September, 1946, soon before the injury, and paid $6,000 for that, including the land. In no event could the verdicts exceed the values of the building (*Gass* v. *Agate Ice Cream, Inc.*, 264 N. Y. 141).

The judgment appealed from should be reversed and a new trial ordered, with costs to the appellants to abide the event unless plaintiffs severally stipulate to reduce the amounts of the judgment to $4,000 damages in the case of Agnes Fagan for No. 122 East 107th Street, and $4,500 damages for Helenia Realty Corporation for No. 120 East 107th Street, exclusive of the recovery of costs allowed by the trial court, in which event and as so modified the judgment is affirmed, with one bill of costs to the appellants.

CALLAHAN, J. (dissenting in part). I concur with the majority in all respects, except that I dissent as to MacArthur Concrete Pile Corporation and vote to dismiss the plaintiffs' complaints as well as the Pathe cross claims against this defendant on the ground that no actionable negligence was proved.

The liability of MacArthur could only be based on common-law negligence. The driving of piles is a far less dangerous operation than blasting. It is my opinion that the rule of law enunciated in the blasting cases should be applied to pile-driving. In substance, this rule is that no liability may be imposed for damage to neighboring property from vibration or concussion due to blasting without actual trespass and in the absence of proof that the work was performed in a negligent manner (*Page* v. *Dempsey,* 184 N. Y. 245; *Booth* v. *Rome, Watertown & Ogdensburg Terminal R. R. Co.,* 140 N. Y. 267). The vibration of the earth is as natural a result of a pile-driving operation as is concussion from blasting. Damage consequent upon such vibration, and possibly influenced by some weakness in the construction of the neighboring structure, does not create liability, unless the failure to use due care is established by the evidence directly or by clear inference from the facts. It cannot rest upon conjecture alone (*Holland House Co.* v. *Baird,* 169 N. Y. 136, 142).

On the present record MacArthur did nothing that would evidence lack of due care. There was no proof of failure to exercise such care in the method pursued by MacArthur in driving the piles. The plaintiffs point to the fact that piles of two different sizes and types were used, and claim that the jury might infer that no injury would have resulted if only the smaller pile had been used. This, however, is entirely conjectural. There was no testimony showing that standard practice required the use of the smaller piles. In fact, it would be wholly speculative for the jury to find that the job could have been effectively performed by the use of such piles throughout. There was no proof offered in this case such as was introduced in *Petillo* v. *Kennedy & Smith, Inc.* (263 App. Div. 821) to show that the piles could have been driven with less power and less vibration. The theory of soil erosion advanced by the expert for the plaintiffs, even if credible, affords no basis for a finding of negligence against the pile-driving contractor, who was not charged with the duty of lateral support.

As MacArthur did not cause the excavation of the plot, it may not be held liable for violation of the provisions of the

Administrative Code with respect to shoring of the adjoining property. It seems to me that the majority opinion proposes an unwarranted extension of statutory duty and liability in holding that MacArthur is liable to the plaintiffs merely because it proceeded with the pile-driving operation without first seeing that the statute was obeyed by the owner and general contractor.

Clearly there was no basis under the pleadings, the evidence, or the trial court's charge that would support the plaintiffs' verdicts against MacArthur on a theory of breach of contract predicated on the assumption that the plaintiffs were third party beneficiaries of the contract between Pathe and MacArthur.

PECK, P. J., DORE and COHN, JJ., concur with VAN VOORHIS, J.; CALLAHAN, J., dissents in part in an opinion.

Judgment reversed and a new trial ordered, with costs to the appellants to abide the event, unless the plaintiffs severally stipulate to reduce the amounts of the judgment to $4,000 damages in the case of Agnes Fagan for No. 122 East 107th Street, and $4,500 damages for Helenia Realty Corporation for No. 120 East 107th Street, exclusive of the recovery of costs allowed by the trial court, in which event and as so modified the judgment is affirmed, with one bill of costs to the appellants. Settle order on notice.