**117 So.2d 907**

Mrs. Lucille DIVICENT, Wife of Alfred JEANFREAU and Alfred Jeanfreau.

v.

George A. SANDERSON and Employers Liability Assurance Corporation, Limited.

No. 43914.

Feb. 15, 1960.

Drury & Lozes, New Orleans, for defendants-appellants.

Frank J. D'Amico, New Orleans, for plaintiffs-appellees.

HAMLIN, Justice.

Defendants appeal from a judgment of the trial court awarding plaintiffs $2,185 for property damages to their residence allegedly caused by pile driving operations on adjacent property owned by defendant George A. Sanderson.

George A. Sanderson entered into a building contract with Wallace A. Drennan for the construction of the residence on Sanderson's property located at 6830 Memphis Street, New Orleans, Louisiana. Being an architect by profession, Sanderson prepared his own plans, specifying thirty foot piling in order to meet the building requirements of the City of New Orleans. Drennan, the general contractor, executed a subcontract with Gurtler-Hebert & Co., Inc. for the work relative to the driving of piling in connection with the construction of Sanderson's residence. Thereafter, during July, 1955, forty-two piles were driven some twenty-seven feet below the surface of the ground. As a result of such pile driving operations, Mr. and Mrs. Alfred Jeanfreau, who owned and occupied a residence at 6824 Memphis Street, adjacent to the Sanderson lot, asserted that they suffered property damages and brought legal action for the recovery of same against George A. Sanderson and his insurer, Employers Liability Assurance Corporation, Limited. The prayer of their petition was for $3,280, which they itemized as follows:

Closet bowl, etc. .......... $   110.00
Plaster, etc. ...............  2,170.00
Inconvenience and Mental
    Anguish ...............  1,000.00 [1]
                             _____
                             $3,280.00

Defendants generally denied the allegations of plaintiffs' petition. They then filed a third party petition naming Gurtler-Hebert & Co., Inc., the piling contractor, as third party defendant. They alleged that any damage or injury sustained by Mr. and Mrs. Jeanfreau was occasioned through the negligence of the third party defendant and not through any fault or negligence on the part of the third party plaintiffs, and that, therefore, they should be assessed with no liability to Mr. and Mrs. Jeanfreau. Alternatively, they contended that should they be held liable, that any negligence on the part of George A. Sanderson was secondary and/or passive and that they would be entitled to be indemnified by the third party defendant, whose alleged primary and active negligence caused the alleged damage.

Gurtler-Hebert & Co., Inc. filed an exception of no cause or right of action, which was referred to the merits, and answered denying liability to Mr. and Mrs. Jeanfreau. It averred that the driving of piles was conducted in strict accordance with the plans and specifications furnished by Wal-

[1]. The trial court disallowed this item. Counsel for plaintiffs urges it in his brief, but he did not appeal nor complain by way of answer to the appeal. Blasingame v. Anderson, 236 La. 505, 108 So.2d 105.

lace A. Drennan, acting for George A. Sanderson.

In addition to assessing defendants with damages, the judgment of the trial court rejected their demands as third party plaintiffs against Gurtler-Hebert & Co., Inc.

The present appeal was taken from the entire judgment of the trial court, but in brief appellants state:

"We are not concerned in this appeal with the question originally raised in the third party complaint as to the liability of the third party defendant, Gurtler Hebert & Co., Inc." [2]

Therefore, posed for our determination are the contentions of appellants that the appellees did not prove their case in the trial court with any degree of reasonable certainty; that the appellees did not meet the burden of proof required of them; and that damages cannot be awarded on speculation.

We shall commence our analysis of the evidence on the predicate that the pile driving operations on defendant Sanderson's property were in compliance with the building requirements of the City of New Orleans. Because of appellants' statement, supra, no liability on this appeal can be attached to the third party defendant, Gurtler-Hebert & Co., Inc.

The cost of Mr. and Mrs. Jeanfreau's brick veneer residence, exclusive of the lot, was between $20,000 and $23,000; its foundation consisted of some fifty-five or sixty piles driven to a depth of twenty-seven feet. George J. Lupo, building expert for Jackson Homestead, testified that he was employed by Mr. and Mrs. Jeanfreau, investors in the Jackson Homestead, to supervise the construction of their home at 6824 Memphis Street in 1954. He stated that he made four inspections a week during the construction of the house by a sub-contractor, and that he had not seen the house since his last inspection a short period after completion. His testimony was affirmative as to the stability of the residence.

Mr. Bernard J. Aronson, architect and contractor, testified that he had inspected the Jeanfreau residence during the latter part of 1956. He stated that the house faced in an easterly direction and that the Sanderson property was on its north side. Damages that he found were an exterior mortar crack, six feet off of the ground, running three-quarters the length of the house on its north side; one long mortar crack on the south side of the house running horizontally near the garage door; extensive cracks in two tile bathrooms; cracks in the plaster of the bedrooms, living room, and dining room; and lengthy cracks in the tile of the kitchen. He found that the hallway had been repaired. Mr. Aronson had sub-contractors estimate the price of repair. Their estimates were as follows:

2. This statement was reiterated in argument.

Bonfanti Tile ...............$ 875.00
Phil Kaye, patching plaster and
 repainting ................ 1200.00
     ————
     $2075.00

When questioned on direct examination as to the cause of the damage, Mr. Aronson testified:

"In my opinion although some of those cracks may occur under normal conditions of settling, breathing, and even faulty workmanship, I do not believe that the extent of cracking in this house is due to settling, breathing or faulty workmanship. In my opinion, the driving of piling is the cause of the greatest portion of the apparent damages and, quite probably the cause of the entire list.

"Although it is true that cracking, under normal conditions, frequently occurs at the point of least resistance, such as at the edges of doors and windows and other openings, it is not true that all houses will have cracks occur. Certain abnormal cracks, which I will go into further, further lead me to believe that almost all of the apparent cracks are not due to normal conditions. Piling could have caused all cracks. Under normal conditions I have seen ceramic tile to wall flake or pop where settling is occurring. I have also seen ceramic tile crack but the cracks appear to open up, to some ex-

tent. This can be due to normal settling or to contraction of framing material. However, in the present case, neither condition has occurred. The cracks in the ceramic tile have not opened up from settling nor have any of the tile flaked from compression as may occur in contraction of framing material. I, therefore, conclude that jarring from piling is a logical cause. From my inspection of the house, it is a new house and of good quality and workmanship. The abnormal, what I call abnormal cracks, I would say show up as that crack nine inches from the edge of the door to the bathroom and, at the same time, a hairline crack at the edge of that same door. In my opinion, in normal conditions, two cracks like that, would not occur, not a hairline crack and a wide open crack. * * * "

As to the damages caused by the pile driving, Mr. Aronson testified as follows on cross-examination:

"Q. Tell us what you think was caused by the piling?

A. By the pile driving. I think that these particular cracks that I am going to read off were definitely caused only by the pile driving.

"The mortar cracks adjoining the north side. The cracks occurring over the door to the bath from the front bedroom. The crack occurring over the front window.

"Q. Which room is that?

"A. That is the front bedroom. In my opinion all of the tile cracks, that included the tile in the bathroom and in the kitchen. The horizontal cracks in the plaster generally and the cracks I would say over the arch and because of the extent of those cracks that I think were definitely caused by the piling and because of the lack of crack in the more normal location. I would say that all of the cracks on the list, in the plaster, and other than what I have read off, were caused by piling."

On re-direct examination, Mr. Aronson testified:

"I would think that the damage that I saw was not due to normal shrinkage or settlement, nor from workmanship. I would say that it was caused by * * the damages were caused by the piling that were driven in the adjoining house. That, of course, is from my standpoint on the assumption there were no cracks before the piling and there were cracks after the piling."

Mrs. Jeanfreau recalled that the pile driving operations took place on a Saturday and the following Monday during July, 1955. Pertinent testimony, in part, is as follows:

"Q. Now, would you tell the Court what observations you made? What physical observations you made while these pile driving operations were being conducted next door to your property?

A. On Saturday or on Monday?

"Q. Well, tell about what took place on Saturday. A. I was lying down. I was not feeling well and the vibration was so bad that I had to get up. Of course, that was not continually. But Monday, when they did the pile driving, well, I was sitting in the kitchen and I could see the kitchen crack clean across. Then I had a crucifix right opposite where the piling was being driven; it came off the wall. Later my mirror fell. I had a mirror that I had been having for seventeen years and I had a carpenter to put it up so it would be properly placed. That came down.

"Q. Was there any other damage to objects in hour house? A. Well, I have a marble pedestal that also got damaged."

With respect to physical damages to walls and ceilings, Mrs. Jeanfreau's testimony substantiates that of Mr. Aronson. Additionally, she stated that there was damage done by the pile driving operations to a bathroom commode to the extent of constant overflow. She said that shortly after the damage occurred, she employed a plumber to repair the commode and paid him $110 for the job. She also stated that she had her hall patched and repainted at a

cost of $75.[3] Mrs. Jeanfreau affirmatively testified that her residence was in perfect physical condition prior to the pile driving operations.

Mrs. Jeanfreau stated that she was frantic after experiencing the vibrations from the initial pile driving operations, and that she ran out of her house and remonstrated with the operators. She stated that Mr. Sanderson was informed of the trouble; that later in the day he visited her house to observe the damage. Mrs. Jeanfreau stated that the defendant insurance company sent an estimator out to her house shortly after July 25, 1955 (the Monday on which the pile driving occurred),[4] to detail the damages.

Mr. Jeanfreau's testimony affirms that of his wife. He stated that the rock lath in his home was perforated,[5] and that prior to the pile driving operations, he had observed no defects in his new residence. He said that he was not at home when the piles were driven, but that his wife showed him the damages to the plaster and tile upon his return home. He stressed the damage caused to a bathroom commode, stating that the vibration broke the bolts holding the toilet bowl to the floor. He testified that it was necessary to have this item repaired shortly after the breakage.

Mr. A. W. Munn, a building contractor, testified that on August 27, 1955, he submitted to the defendant insurance company an estimate of repairs to damages to the Jeanfreau house in the sum of $2,170. He said that he went to the house and saw the cracks but did not know what caused them.

Mr. Gordon J. Troyer, a claims adjuster for Employers Liability Assurance Corporation, Ltd. in 1955, testified that he investigated the Jeanfreau claim and recommended that Mr. Munn make his estimate.[6]

Mr. George J. Riehl, a building expert, examined the Jeanfreau residence during the latter part of 1956, at the request of counsel for the defendants. He submitted a report dated January 4, 1957, wherein he said that the residence had a foundation setting on piling and tied together by reinforced grade beams. He stated that this was an excellent foundation which avoids vibration by piling being driven adjacent to such a foundation. He stated that the plaster was on rocklath, and that the plans did not mention if the rocklath was perforated. In his opinion, plaster on rocklath, not perforated, would crack with normal deflection, shrinkage, expansion or contrac-

---

3. No demand is made for this repair.
4. Counsel for the defendant insurance company admitted that an estimate of the cost of repair of the damage was made in August, 1955.

5. Perforation helps resistance to vibration.
6. Messrs. Munn and Troyer were called by defendants.

tion. He admitted damage to the residence, but concluded his report as follows:

"If the vibration from the pile driving had been severe enough to damage the plaster and tile, it is certain it would have likewise caused cracks or damage in some way to the brickwork on the side of the residence. No cracks are evident in the wall adjacent to the site where piles were driven.
* * *

"Finally, it is the writer's opinion, as analyzed above, that the cause of the cracks in the residence is due to normal deflection, expansion and contraction, conditions which always occur in wood frame construction and is not due, in my opinion to piling having been driven on the adjacent property."

Defendant George A. Sanderson testified that he visited his property on July 23, 1955, and that the pile driving equipment was set up on his lot. He said that two workmen were on the premises, and that one of them told him that an exploratory pile had been driven and that it was under the hammer. He stated that on the following Monday morning, he went back to his property, and "Mrs. Jeanfreau had come outside and told us that we were vibrating or shaking the—I think she used the word—bric-a-brac or something, so I immediately stopped the pile driving operation and went into her house." Mr. Sanderson stated that he found various cracks in the plaster and told Mrs. Jeanfreau that he would refer the matter to the insurance company adjuster. He then went outside, and when he felt that the piles were being driven to the satisfaction of the homestead building inspector, the city building inspector, the contractor, and himself, he went on to his business. He returned to the Jeanfreau home that evening and observed that the same cracks existed. He said that they had not increased. He testified that he had no knowledge nor idea of whether the damage could or could not have been definitely caused by the driving of the exploratory piling. He said that his insurer was notified that there might be a possible claim for damages.

"It is the settled law that in a damage suit the burden of proof is on the plaintiff." Tadin v. New Orleans Public Service, Inc., 226 La. 629, 76 So.2d 910, 912. A review of the above evidence conclusively shows that plaintiffs assumed their burden and proved their case. Succession of Thibodeaux, 238 La. 791, 116 So.2d 525.

Testimony to the effect that Mr. and Mrs. Jeanfreau's brick veneer residence was properly constructed and built of solid materials is uncontradicted. Mr. Jeanfreau testified that the rocklath was perforated; the building experts were uninformed as to the specifications.

Although Mrs. Jeanfreau's recollection as to elements of time is not entirely consistent,

she had no doubt as to her experiences at the time of the pile driving and the occurrence of the damage. Both Mr. Jeanfreau and Mrs. Jeanfreau affirmatively testified that their home was in perfect condition prior to the driving of the piles.

Mr. Sanderson, the owner of the adjacent property, admitted that he observed the alleged damage almost immediately after it is supposed to have occurred.

Mr. Aronson's testimony is affirmative as to the cause of the damage; he said that it was caused by the driving of the piles.

The testimony of Mr. Riehl to the effect that natural causes were responsible for the damage to plaintiffs' property is contradicted; the weight of the evidence is not with him.

█ We conclude that the damage suffered by plaintiffs was occasioned by the pile driving operations on defendant Sanderson's property.

██ In order to be recoverable damages must be proved. Andrus v. White, 236 La. 28, 106 So.2d 705; Dowden v. State, La.App., 81 So.2d 48. The foregoing evidence proves the extent of the damages suffered by plaintiffs. The estimates presented by Mr. Aronson and by Mr. Munn, supra, are almost identical.

The award of the trial court was $2,185. This amount included the estimate submitted to Mr. Aronson by sub-contractors and the $110 paid by plaintiffs for repair of a bathroom commode. This award is fair and just.

For the reasons assigned, the judgment of the trial court is affirmed; costs are to be paid by defendants.

HAMITER, J., did not participate.