MICHAEL CAPORALE ET AL. *v.* C. W. BLAKESLEE AND SONS, INC.

BALDWIN, C. J., KING, MURPHY and ALCORN, Js.[1]

Argued October 6—decided November 21, 1961

*Francis J. Moran,* with whom was *Robert F. Moran,* for the appellant (defendant).

---

[1] By agreement of counsel the case was argued before and decided by four judges.

*William M. Mack,* with whom was *Robert N. Schmalz,* for the appellee (named plaintiff).

BALDWIN, C. J. The plaintiffs, Michael Caporale and Acme Tile and Flooring, Inc., brought this action against the defendant to recover for damage to property which Caporale owned and Acme occupied. The damage was allegedly caused by vibrations resulting from the pile driving operations conducted by the defendant as a subcontractor in the construction of the Connecticut turnpike. The complaint was originally in two counts, alleging, in substance, in the first count, negligence and, in the second count, the carrying on of an intrinsically dangerous operation in close proximity to Caporale's property. After the plaintiffs had rested their case, the court allowed an amendment to the complaint alleging, in a third count, that the defendant's conduct constituted a nuisance. As a result of motions then made by the defendant, it was agreed by the plaintiffs that judgment should be rendered for the defendant with respect to Acme on all three counts and with respect to Caporale on the first count, which alleged negligence. The case was then considered by the court as to Caporale's right to recover on the counts alleging nuisance and the carrying on of an intrinsically dangerous operation.

The finding, which is not attacked except as to certain conclusions, to be discussed hereinafter, may be stated in summary as follows: Caporale is the owner of two cement-block buildings at 157-159 Water Street in New Haven. He has conducted a tile contracting business in the buildings continuously since their construction prior to 1950 and, as an incident thereto, keeps a display tile bathroom

with running water. From at least 1945 until 1958, Water Street was used by trucks and trailers as a major two-way traffic artery. Although the movement of such vehicles was usually noticeable within the Caporale buildings, there was no appreciable vibration. In the early part of 1958, construction of the portion of the Connecticut turnpike called the Oak Street connector was under way on the south side of Water Street, generally opposite the Caporale buildings. The early stages of construction entailed the use of heavy earth-moving machinery and pile drivers, but none of this activity had any observable effect on the buildings prior to October, 1958. At this time, the buildings were in a good state of repair, without noticeable cracks in floors, walls or ceilings, as were also the display tile bathroom and another bathroom.

Between October, 1958, and January, 1959, the defendant drove approximately 400 piles for the foundations of a large concrete retaining wall and a bridge abutment on the south side of Water Street, across from the Caporale buildings and approximately 75 feet away. These piles were of fluted steel, 60 to 70 feet in length, and were driven by steam hammers capable of delivering from 7250 to 15,000 foot-pounds of energy. The hammers operated approximately six hours a day every day except Sundays during the whole four-month period. Prior to driving the piles, the defendant checked the condition of some of the buildings in the area so that it could establish later what damage, if any, had been caused by its pile driving activities, but it made no effort to check the condition of the Caporale buildings. Commencing in October, these buildings shook and vibrated while the pile driving was going on; numerous cracks opened in the

walls, floors and ceilings; the tile bathrooms were damaged; and water pipes were broken. After the defendant ceased driving piles in January, 1959, no further cracks appeared. There was no evidence of any activity, other than that of the defendant, which could have accounted for the damage. The court concluded that the damage was proximately caused by the defendant's pile driving operations and that the defendant was liable on the grounds of nuisance and that it carried on an intrinsically dangerous operation. The defendant assigns the above conclusions as error.

We will consider first the defendant's claim that the facts found do not establish that its conduct was a proximate cause of Caporale's damage. A conclusion of causation cannot be disturbed if the subordinate facts reasonably support it. *Scranton* v. *L. G. DeFelice & Son, Inc.*, 137 Conn. 580, 583, 79 A.2d 600, and cases cited therein. That the damage resulted from the vibration caused by the defendant's pile driving activities is amply supported by the unchallenged subordinate facts.

In allowing Caporale to recover on the count which alleged that the defendant was carrying on an intrinsically dangerous operation, the court relied on *Whitman Hotel Corporation* v. *Elliott & Watrous Engineering Co.*, 137 Conn. 562, 79 A.2d 591. In that case, the plaintiff recovered for damage to its hotel caused by vibrations resulting from blasting with dynamite. We pointed out (p. 565) "that the explosion of dynamite is an intrinsically dangerous operation and that, therefore, one who engages in it acts at his peril." We stated the rule to be as follows: "A person who uses an intrinsically dangerous means to accomplish a lawful end, in such a way as will necessarily or obviously expose the per-

son of another to the danger of probable injury, is liable if such injury results, even though he uses all proper care." We cited *Worth* v. *Dunn,* 98 Conn. 51, 59, 118 A. 467, which involved personal injuries from flying debris. We said that the rule of that case applied not only to personal injury but to property damage and that (p. 570) logically no distinction could be made between flying debris and vibrations set up by the explosion of dynamite. See *Starkel* v. *Edward Balf Co.,* 142 Conn. 336, 341, 114 A.2d 199; *Antinozzi* v. *D. V. Frione & Co.,* 137 Conn. 577, 580, 79 A.2d 598; *Welz* v. *Manzillo,* 113 Conn. 674, 683, 155 A. 841; *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 527, 28 A. 32.

The defendant contends that a pile driver is not an inherently or intrinsically dangerous instrumentality and that an "appliance, machine or structure" which is not obviously dangerous, has been in daily use for years, and has uniformly proved adequately safe and convenient may be continued in use without the user's being guilty of culpable negligence. The defendant argues further that if no negligence is proven, there can be no recovery. Under some circumstances, it must be conceded that is true. See *Greeley* v. *Cunningham,* 116 Conn. 515, 518, 165 A. 678; *Godfrey* v. *Connecticut Co.,* 98 Conn. 63, 68, 118 A. 446; *Barber* v. *Manchester,* 72 Conn. 675, 682, 45 A. 1014; *McAdam* v. *Central Ry. & Electric Co.,* 67 Conn. 445, 447, 35 A. 341. The *Whitman* case, supra, involved the use of dynamite, and that instrumentality, by itself, is generally regarded as intrinsically dangerous. The pith of the rule stated in the *Whitman* case was, however, not alone that a dangerous instrumentality was used but that it was used under such circumstances and conditions as necessarily and obviously to ex-

pose the person or property of another to probable injury even though due care was taken. Id., 566; see *Pope* v. *New Haven,* 91 Conn. 79, 83, 99 A. 51. The words "necessarily," "obviously" and "probable" imply that, even if due care is employed, there is an unavoidable risk of damage. The factors stated above create, in combination, an intrinsically dangerous operation or activity. In bringing them together, albeit for a lawful purpose and with due care, one acts at his peril. *Whitman Hotel Corporation* v. *Elliott & Watrous Engineering Co.,* supra, 566.

Cases involving pile drivers are far from uniform in their analyses or results. The theories of strict liability, negligence and nuisance have been applied. Two recent cases in Louisiana imposed liability for concussion damage caused by pile driving regardless of negligence, on the basis of a provision in the civil code of that state which was said to embody the maxim "Sic utere tuo ut alienum non laedas." *Hauck* v. *Brunet,* 50 So. 2d 495, 497 (La. App.); *Jeanfreau* v. *Sanderson,* 239 La. 51, 63, 117 So. 2d 907. Dean Prosser cites an English pile driving case, *Hoare & Co.* v. *McAlpine,* [1923] 1 Ch. 167, which he states rests on the principles of absolute liability laid down in *Rylands* v. *Fletcher,* 3 Hurl. & Colt. 774, rev'd on appeal, L.R. 1 Ex. 265, aff'd, L.R. 3 H.L. 330; see Prosser, "Nuisance Without Fault," 20 Texas L. Rev. 399, 405. In New York, strict liability is imposed in cases involving blasting where the injury results from flying debris, but liability is not imposed where the injury results from vibrations caused by blasting unless there is negligence. By analogy, liability is not imposed for injury resulting from vibrations caused by pile driving, unless there is negligence. *Fagan* v. *Pathe Industries,*

*Inc.,* 274 App. Div. 703, 708, 86 N.Y.S.2d 859; *Petillo* v. *Kennedy & Smith, Inc.,* 263 App. Div. 821, 31 N.Y.S.2d 481; see *Booth* v. *Rome, W. & O.T.R. Co.,* 140 N.Y. 267, 278, 35 N.E. 592; *Holland House Co.* v. *Baird,* 169 N.Y. 136, 141, 62 N.E. 149; *Schlansky* v. *Augustus V. Riegel, Inc.,* 9 N.Y.2d 493, 496, 174 N.E.2d 730.

To impose liability without fault, certain factors must be present: an instrumentality capable of producing harm; circumstances and conditions in its use which, irrespective of a lawful purpose or due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and a causal relation between the activity and the injury for which damages are claimed. The defendant actor, even when he uses due care, takes a calculated risk which he, and not the innocent injured party, should bear. He "is not regarded as engaging in blameworthy conduct. He is creating hazards to others, to be sure, but they are ordinary, and reasonable risks incident to desirable social and economic activity. But common notions of fairness require that the defendant make good any harm that results even though his conduct is free from fault." *Whitman Hotel Corporation* v. *Elliott & Watrous Engineering Co.,* 137 Conn. 562, 567, 79 A.2d 591, quoting from Harper, Torts, p. 408; see 2 Harper & James, Torts, § 14.7. The pile driver used in the case at bar was clearly an instrumentality capable of producing harm. The purpose for which it was being used, the construction of a public highway, was a lawful purpose, socially and economically desirable. Caporale concedes that there was no negligence in the use of the pile driver. The driving of heavy steel piles with this powerful in-

strument over a period of four months within seventy-five feet of his concrete-block buildings, even when due care was used, spells out circumstances and conditions which involve the risk of probable injury, a risk which, in fact, was actually anticipated by the defendant when it inspected premises nearby before it began work. The operation was, as the court correctly found, an intrinsically dangerous one, and the court's conclusion of absolute liability was proper.

It is true that inherently or intrinsically dangerous activities have been loosely labeled nuisances. See *Brock-Hall Dairy Co.* v. *New Haven,* 122 Conn. 321, 326, 189 A. 182, wherein we cite *Worth* v. *Dunn,* 98 Conn. 51, 62, 118 A. 467, as a case involving a nuisance; *Starkel* v. *Edward Balf Co.,* 142 Conn. 336, 341, 114 A.2d 199; Prosser, "Nuisance Without Fault," 20 Texas L. Rev. 399. But the label adds nothing. It rather tends to confuse because, ultimately, it must be determined in a case such as we have here why the conduct complained of constitutes a nuisance, and we are then right back to the consideration of the elements which impose absolute liability. These differ radically from the elements which in the vast majority of cases constitute nuisance. The view we have taken makes it unnecessary to discuss further the count of the complaint which alleges a nuisance and the court's conclusions thereon.

There is no error.

In this opinion KING and ALCORN, Js., concurred.

MURPHY, J. (concurring). Had the opinion sustained the judgment on the count alleging nuisance, I could agree, since there is no doubt in my mind that the damage to Caporale's buildings was caused

by the defendant's pile driving operations. I am willing to concede, however, that a rather hair-splitting distinction would be required to sustain the judgment on the nuisance count, since the plaintiffs consented to judgment for the defendant on the count alleging negligence and have thus eliminated liability on the theory of nuisance arising from negligence. Although it may be difficult to spell out an absolute nuisance, as distinguished from one arising from negligence, I feel that under the rule of *Beckwith* v. *Stratford,* 129 Conn. 506, 509, 29 A.2d 775, and cases cited therein, an absolute nuisance could be found. Parenthetically, it may be noted that if the count in negligence had remained, the doctrine of res ipsa loquitur would have applied. *Briganti* v. *Connecticut Co.,* 119 Conn. 316, 320, 175 A. 679; see *Bonczkiewicz* v. *Merberg Wrecking Corporation,* 148 Conn. 573, 579, 172 A.2d 917.

In *Greeley* v. *Cunningham,* 116 Conn. 515, 518, 165 A. 352, we said that "[a]n automobile, while capable of doing great injury when not properly operated upon the highways, is not an intrinsically dangerous instrumentality to be classed with ferocious animals or high explosives." I cannot conceive that a pile driver is any more dangerous than some of the high-powered cars and gargantuan tractor-trailers that infest our roads today. An inherently or intrinsically dangerous work is work that is necessarily attendant with danger no matter how skilfully or carefully it is performed. *Janice* v. *State,* 201 Misc. 915, 920, 107 N.Y.S.2d 674; *Wright* v. *Phoenix Utility Co.,* 198 N.C. 204, 206, 151 S.E. 241. The effect of the majority opinion is to impose absolute liability, that is, liability without fault, whenever a pile driver is used. See *Whitman Hotel*

*Corporation* v. *Elliott & Watrous Engineering Co.,*
137 Conn. 562, 576, 79 A.2d 591 (concurring
opinion). I do not feel that a pile driver is in-
trinsically dangerous.