CRAIN, Judge.
After a thorough review and evaluation of the record, we are convinced that the evidence supports the facts found and the reasons assigned by the trial judge. For the reasons assigned by the trial judge in his Reasons for Judgment, a copy of which is attached hereto and made part hereof, the judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.
Maurice Barbier, et al. vs. Mac Wade, et al.
No. 61,316-D
16th Judicial District Court
Parish of St. Mary
State of Louisiana
REASONS FOR JUDGMENT
On June 3, 1980, Maurice Barbier, Luke Cutrone and Charles LeBlanc filed this lawsuit against Mac Wade, Berry Brothers General Contractors, Inc., Allstate Insurance Company, and State Farm Fire & Casualty Company, to recover for damages to their residences they claim they incurred because of some pile driving conducted by Berry Brothers General Contractors, Inc. on the property of Mac Wade situated to the rear of their respective residences on Dale Street in Auburn Subdivision in Morgan City, Louisiana. They also seek these damages from their own homeowner’s insurers.
In March of 1979, Mac Wade decided to build a house on Victor II Boulevard in Morgan City, and was advised and felt that it was proper to drive piles into the ground prior to building his house slab, as this would prevent settling. He contracted with Weldon Miller, who was then an employee of Berry Brothers General Contractors, Inc. to do this work, and received a favorable price on the job as Mr. Wade and Doyle Berry, one of the owners of the Berry Brothers General Contractors, Inc., were engaged in another business. Berry Brothers General Contractors, Inc. used some large piles that Mac Wade had obtained from another source, and in fact drove these piles into the ground for the slab. While this happened, several of the landowners complained to the employees of Berry Brothers General Contractors, Inc. that the noise and vibrations of the pile driving was disturbing them. Nevertheless, the pile driving was completed and Mr. Wade ultimately had his slab and had his house.
Mr. Barbier testified that he moved into Auburn Subdivision in 1966. He was there when the piles were driven, along with other neighbors who were unhappy about the vibrations and noise. He first began to notice various broken concrete, cracked bricks and sheetrock around the house a couple of months after March 1979. He did note, however, that sometimes around 1977 he had a settling problem and had to have one of his corners raised as there were cracks in the sheetrock and he noted later some of the window frames were out of kilter and there were cracks running through the bricks. In doing this work, the contractor had to remove some trees that apparently were buried when the subdivision was laid out.
Luke Cutrone lives next to Mr. Barbier. His house also was built in 1966 on a slab, but not sitting on pilings, and at the time *323 he knows of no other houses in that area that had pilings. He was then working for the Cutrone Realty Company and they apparently were the agents to handle the sales in Auburn Subdivision. In March of 1979 his wife called him very upset about the pile driving and he went over to the locale to discuss it. There was no immediate damage but four or five months later he first noticed that there were problems. He went to the State Farm Insurance Agent to discuss it but they claim that his problems were normal settlement and there was no coverage. He noted that the doors were off, that there were cracks in and out of the house, there were cracks on the bricks outside the house, and much interior damage, and he states that there was no damage prior to the pile driving. He did note that Sam Spitale used some pilings about 300 feet from his house and when his piles were driven there was no vibration, which he thinks was caused by the fact that Spitale used poles rather than bulkhead pilings, the latter being much wider in diameter.
Charles LeBlanc is also a neighbor of Barbier and Cutrone. He moved there in 1966, while the house was being built on a floating slab. He was there when the pile driving commenced and was seated on a utility chair and started bouncing. He felt there was a lot of shaking of his house in the rear. The pile driving lasted for two or three days and he was there when the complaints were made about the noise and vibration. He said about two or three months after the pile driving his daughter complained about the cracks in her bedroom. A shower started to crack, outside there was big zig-zag cracks in the bricks on three sides of the house but not the front. The defendants contend that the whole Auburn subdivision was built from cut over swamp and it is low lying and wet and houses in that subdivision will settle without pilings.
Several “experts” testified concerning pile driving and settling on both sides of the case.
Weldon Miller was working for Berry Brothers General Contractors, Inc. when the contract was made for the Wade pilings. He had some experience in residential pilings but much experience in industrial pilings. At the time of the Wade operation Berry Brothers had just about given up doing residential pilings because of the complaints of the neighbors about vibration and damages. But they did it for Wade more or less as a favor. He felt that the damage to the plaintiffs’ houses could have been caused by the pile driving but it is not necessarily so. He felt that some of the damages to homes is because of settlement, and also because of upheavals because of our wet soil.
John L. Pfeffer testified for the defendants and Marcon Starns testified for the plaintiffs as experts.
The Court was more impressed, however, with the testimony of Lloyd Hill and Harold Myers.
Lloyd Hill, age forty-three, is a partner in the Eustice Engineering Company. He received a Bachelor of Science Degree in 1965 from L.S.U.B.R. in Civil Engineering, and later in 1979 a Masters Degree in Civil Engineering. He has been an investigator of soil conditions for twenty-one years. His company has worked on big projects such as the Super Dome, high rise buildings in New Orleans, Canal Place, and many others. He made some log borings at the Wade residence. He is familiar with the soils in the Morgan City area and has read the depositions of the plaintiffs and Mr. Starns. He is of the opinion that all of the residences in the Auburn Subdivision should be placed on pilings to prevent differential settling and foundation problems. Without the pilings the houses will ultimately settle. He was of the opinion that the pile driving will not cause settling but that pile driving can cause problems such as cracks in bricks, sheetrock and other places, but these problems will immediately become apparent. He notes that the soil condition in the Auburn Subdivision are condusive to soil subsidence, especially with the summer and winter changes and dryness and wetness of the area. He also noted that the human body is very susceptible to noise and vibrations and it can detect *324 pile driving and become very uncomfortable from it very easily. He noted that the soil is an alluvial deposit and the water level changes from day to day and season to season which can cause soil subsidence which in turn causes residential subsidence.
Harold Myers, age fifty-five, is a graduate mechanical engineer from the University of Oklahoma, with much experience in damage and failure analysis. He testifies concerning the cause of damages and to some extent the repairs necessary to correct the damages. He examines structural failures for vibrations due to pile driving. On November 3, 1980 he examined the plaintiffs’ homes and also the neighborhood within two or three blocks of the plaintiffs’ homes. He noted that soil subsidence is rampant there. People have had to fill in dirt in their back yards because of the subsidence. There are unlevel driveways and sunken streets and sidewalks that are cracked and uneven throughout the subdivision. He is of the opinion that none of the damage that he observed was caused by vibrations, and that at least some of the damage certainly had occurred prior to March 1979. He was also of the opinion that vibration damage is readily ascertained and occurs almost immediately. He stated that vibrations will cause a home to rock one way or another and cracks that do appear will be at a 45 degree angle to the ground level. Also, if vibration damage is done, windows will usually break and cracks will not follow the mortar lines as were shown on the plaintiffs’ homes but would cut right through the bricks. He also noted that the Barbier home had been previously jacked up (which would not help with this problem) and found no vibration damage. He noticed that some of the cracks in the Barbier home followed the mortar line rather than just cracks in the brick, which is evidence of subsidence. He did state, however, that he never did conclude that pile driving vibration has caused damages. He found the same thing on the Cutrone home, although he noted that the damages were not as bad as the Barbier home. He is of the opinion that the damages suffered by the plaintiffs are typical cases of soil subsidence.
It is the opinion of this Court that the plaintiffs have failed to prove by a preponderance of the evidence that the law requires that the damages done to their three homes was caused by the pile driving conducted by the Berry Brothers General Contractors, Inc., contracted for by the defendant, Mac Wade. The better opinion seems to be that it is difficult to cause damages by pile drivings, and that when damages do occur they show up immediately. All of the plaintiffs agree that the damages in this case occurred at least two months after the pile driving and in some cases much later than that. The plaintiffs brought their lots in Auburn Subdivision, which was formerly swamp land adjacent to Lake Pal-ourde in Morgan City. When the subdivision was laid out, trees had to be cut that were windrowed and burnt in some instances, and simply buried under the ground in other instances. This was a very poor method of laying out a subdivision. Although the driving of pilings or posts was not prevalent in the Morgan City area, very little was done in the subdivision, and many of the houses besides the plaintiffs’ are suffering from the same type of damages and cracks that the plaintiffs are undergoing themselves. The Court feels that their damages were brought about by the natural or unnatural soil subsidence and not by the pile driving instigated by Mac Wade.
Turning to the question about the policies issued by State Farm to Mr. Cutrone and Mr. LeBlanc, these policies state in the exclusion section that:
“This policy does not insure against loss: Under coverages A, B and C ...
“2. Caused by, resulted from, contributed to, or aggravated by any earth movement, including but not limited to earthquake, volcanic eruption, landslide, mud flow, earth sinking, rising or shifting ... “Under coverages A and C “1. By wear and tear, marring or scratching, deterioration, inherent vice, latent defect, mechanical breakdown, rust, mold, wet or dry rot, contamination, smog, smoke from agricultural smudging or industrial operations, settling, cracking, shrinkage, bulging or expansion of pavements, patios, foundation, walls, floors, roofs, or ceilings ...”
*325 The Allstate policy issued is similar.
Recently the issue was resolved (at least in the Third Circuit Court of Appeals). In the case of Nida v. State Farm Fire and Casualty Company, 454 So.2d 328 (La.App. 3rd Cir.1984), which this Court finds to be on point. In that case the homeowner sued his insurer for damages done to cracks in the foundation and walls. The Court found that the cracks were caused by shrinkage and expansion during dry and wet weather because of the particular type soil on which the house was constructed. The Court of Appeal found that the cause of the plaintiffs damages was earth movement and settling, which was clearly excluded by the policy, and accordingly, there was no recovery by the plaintiff.
The plaintiffs’ attorney adroitly tries to distinguish the Nida case from the facts found at bar, however, this Court concludes that if the Nida case is followed in the First Circuit wherein this Court sits, then the First Circuit would also find that there is no coverage.
Other approximate cases on liability are Jeanfreau v. Sanderson, 239 La. 51, 117 So.2d 907 (1960) wherein recovery was allowed but where the damages occurred immediately; Selle v. Kleamenakis, 142 So.2d 50 (La.App. 4th Cir.1962) where the court said “No visible damages resulted nor appeared until the pile driving began a few feet away,” and Calico v. Employers Liability Insurance Company, 284 So.2d 168 (La.App. 4th Cir.1973) where it was found that the pile driving did not cause the plaintiffs’ problems.
Accordingly, the petition of the plaintiffs will have to be dismissed at their cost.
Let a formal judgment consistent with these views be presented for signature.
Officially in Chambers at Franklin, St. Mary Parish, Louisiana, this 31st day of January, 1986.
/s/ Robert M. Fleming
ROBERT M. FLEMING, JUDGE