[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO STRIKE
The plaintiffs, Donald D. Steinhoff and Maureen T. Steinhoff, bring this action for damages arising from the purchase of a home containing lead-based paint.
The plaintiffs purchased the subject property located at 58 CT Page 10695 Mistuxet Avenue, Mystic, CT., from the defendants, William B. Woodward II and Sandra A. Woodward on June 8, 1998.
The plaintiffs allege that on said date, the defendants submitted to the plaintiffs a lead based paint disclosure form wherein the defendants represented that, as to the subject property, they "had no knowledge of lead-based paint and/or lead based paint hazards in the housing" and that they "ha[d] no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.
The plaintiffs further allege that despite this representation, the defendants had been advised by officials for the town of Stonington that the subject property contained prohibitive and unsafe levels of lead-based paint.
On January 7, 1999, the plaintiffs filed a nine count complaint alleging fraudulent misrepresentation (count one) intentional misrepresentation (count two), negligent misrepresentation (count three), breach of contract (count four), violation of General Statutes § 42-110B (count five), violation of General Statutes § 20-328-5a (count six) violation of General Statutes § 20-327b (count seven), violation of 42 U.S.C. § 4852d (count eight) and strict liability (count nine).
On May 25, 1999, the defendants filed a motion to strike counts seven and nine of the plaintiff's complaint along with a memorandum of law in support.
On June 4, 1999, the plaintiffs filed an objection and a supporting memorandum of law.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael. Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998).
I. General Statutes § 20-327b (Count Seven)
CT Page 10696
The plaintiffs argue that the defendants have violated General Statutes § 20-327b, the Uniform Property Disclosure Condition Act, in that they intentionally misrepresented the existence of lead based paint and/or lead based paint hazards at the subject property.
In opposition, the defendants argue that General Statutes § 20-327b does not give rise to a civil cause of action.
General Statutes § 20-327b provides in relevant part that "each person who offers residential property in the state for sale, exchange or for lease with option to buy, shall provide a written residential condition report to the prospective purchaser at any time prior to the prospective purchaser's execution of any binder, contract to purchase, option, or lease containing a purchase option." General Statutes § 20-327b.
General Statutes § 20-327b does not explicitly provide for a private right of action. Therefore, in determining whether a private remedy is implicit in a statute not expressly providing one, the court must look at three factors: "First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . .? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" (Internal quotation marks omitted.) Napoletano v.Cigna Healthcare of Connecticut, Inc., 238 Conn. 216, 250,680 A.2d 127 (1996), citing Cort v. Ash, 422 U.S. 66, 78,95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).
The first tier of the Cort v. Ash test as adopted by the Supreme Court in Napoletano v. Cigna Healthcare of Connecticut,Inc., supra, 238 Conn. 216, is whether the plaintiff is "one of the class for whose . . . benefit the statute was enacted. . . .?" Id., 249. As buyers of residential real estate, the act directly benefits the plaintiffs by requiring the defendants, sellers of residential real estate, to document essential information on the subject property, including any defects, to the plaintiffs before an offer is made. The filing of the condition report benefits buyers of real estate, such as the plaintiffs, because they are able to make a fully informed decision before committing themselves to a significant investment. CT Page 10697
The second inquiry under Cort v. Ash is whether there is "any indication of legislative intent, explicit or implicit, either to create a remedy or to deny one?" Napoletano v. Cigna Healthcareof Connecticut, Inc., supra, 238 Conn. 249. There is no explicit provision in the language of General Statutes § 20-327b that the legislature either intended to create or to deny a private cause of action. There is, however, an indication in the legislative history that the statute was only intended to promote frank disclosures by a seller of real estate by requiring that his representations become part of the contract of sale.
This is evidenced by the House proceedings on the bill, wherein Representative Eberle remarked: "this [bill is intended to put some etiplothies in writing so that there is no mistake and there is no disagreement, no" you said, I said, you said, he said' if something comes into contract. It is in writing. It is attached to the contract and it is clear what the parties represented." See 38 H.R. Proc., Pt. 19, 1995 Sess., p. 6964. Representative Eberle went on to state :"[t]his bill will help to resolve many problems and miscommunications which frequently complicate and sometimes prevent residential closings from going forward by making it clear what a seller has disclosed to a buyer about the property." Id., 6966.
Hence, it appears to this court that the disclosure requirement merely serves to facilitate the adjudication of contractual and tort claims under a contract of sale that currently exists under the law (i.e. fraudulent misrepresentation: intentional misrepresentation, breach of contract), by requiring documentation of the representations made by a seller.
The third tier of the Cort v. Ash test, and the final tier under Napoletano v. Cigna Healthcare of Connecticut. Inc., supra,238 Conn. 249, is whether it is consistent with the underlying purposes of the legislative scheme to imply a private right of action for the plaintiff.
A review of the legislative scheme reveals that the underlying purpose of the statute is not to assign additional rights or obligations upon the parties, but as previously mentioned, to document the representations made by a seller and to have these representations affixed to the contract of sale, all in the hope of avoiding needless litigation. CT Page 10698
For example, the condition report does not create any new implied or express warranties on behalf of the seller, nor does it require the seller of the property to secure inspection, tests or other methods of determining the physical conditions of the property. See General Statutes § 20-327d. Moreover, the condition report does not seek to extend the required disclosure beyond the seller's actual knowledge of a defect. See General Statutes § 20-327e.
Lastly, the statute imposes a nominal penalty for the failure to furnish the written residential condition report, but not for misrepresentations made within the report, by requiring that a seller credit the buyer three hundred dollars at the time of closing. See General Statutes § 20-327c.
Hence, since the statute does not specifically penalize a seller for misrepresentations made in the condition report, and since the statute requires that the condition report be attached to the contract to purchase, it follows that the legislature left home-buyers to their contractual and tort remedies when it comes to discrepancies within the residential condition report itself.
Therefore, based on the foregoing, the motion to strike count seven is granted.
II. Strict Liability (Count Nine)
The defendant argues that strict liability for maintenance of an abnormally dangerous activity cannot be based upon the existence of prohibitive levels of lead-based paint.
The classification of an activity as abnormally dangerous imposes strict liability on a person who chooses to engage in that activity. Caporale v. C.W. Blakeslee Sons, Inc.,149 Conn. 79, 86, 175 A.2d 561 (1961). Whether an activity is "abnormally dangerous" is a question of law for the court to decide. Id., 86.
The factors which a court must consider in determining if an activity is abnormally dangerous are the existence of a high degree of risk to person or property; the likelihood that injury will be great; the inability to eliminate the risk by reasonable means; the extent to which the activity is uncommon; the inappropriateness of the activity to the place of occurrence; and the extent to which its value is outweighed by its dangerous CT Page 10699 attributes. See 3 Restatement (Second), Torts § 520.
"It appears . . . that Connecticut courts have sought to restrict the use of the doctrine to situations where the dangerous instrumentality is used in such circumstances as to create an unavoidable risk of damage." (Emphasis added.)Gutierrez v. Jefferson Street Medical Bldg., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 529230 (September 27, 1994, Hennessey, J.). "An activity is deemed abnormally dangerous when it cannot be done without unavoidable risk of harm and the actor is unable to eliminate the risk by the exercise of reasonable care." The Connecticut WaterCo. v. Town of Thomaston, Superior Court, judicial district of Hartford at Hartford, Docket No. 535590 (March 4, 1996,Corradino, J.), quoting Restatement (Second) Torts § 520(c).
The Superior Court has consistently declined to find an abnormally dangerous activity in lead paint poisoning cases on the grounds that the deleterious effects of lead paint are avoidable. See Sanchez v. General Urban Corp., Superior Court, judicial district of New Haven at New Haven, Docket No. 378774 (February 6, 1997, Lager, J.); Hall v. Rivera, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 049449 (October 29, 1996, Skolnick, J.); Wilson v. Bellisle,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 546030 (October 3, 1996, Hennessey, J.);Scott v. Duhl, Superior Court, judicial district of New Haven at New Haven, Docket No. 379299 (September 30, 1996, Corradino, J.);Leblanc v. Munger, Superior Court, judicial district of Windham at Putnam, Docket No. 052267 (March 13, 1996, Sferrazza, J.);Gutierrez v. Jefferson Street Medical Bldg., supra, Superior Court, Docket No. 529230; Lovick v. Nigro, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 542473 (February 24, 1997, Lager, J.).
Consequently, this court finds that the sale of a home with lead based paint does not constitute an abnormally dangerous activity under Connecticut Law. Accordingly, the motion to strike count nine is granted.
Martin, J