STOULIG, Judge.
Plaintiff, Angelo Calico, Jr., has appealed a judgment dismissing a claim for damages to his two houses allegedly caused by vibrations from the driving of piles during the course of construction of a new mausoleum in the St. Roch Cemetery in the City of New Orleans. His suit was filed against American Employers’ Insurance *169 Company,[1] as public liability insurer of the owner, the Archdiocese of New Orleans; the general contractor, Acme Marble & Granite Company, Inc.[2] and its insurer; and the subcontractor, Binnings Construction Company, Inc., and its insurer.
Recovery from the owner’s insurer, the contractor, the subcontractor and their respective insurers is sought under the provisions of LSA-C.C. arts. 667 and 2315.
Under either of these concepts of liability, plaintiff must establish the damage was caused by the work undertaken on the neighboring property. See Selle v. Kleamenakis, 142 So.2d 50 (La.App. 4th Cir. 1962), and Elysian Cocktail Lounge & R. v. Sciambra & Masino, Inc., 124 So.2d 149 (La.App. 4th Cir. 1960). This he failed to do.
Plaintiff did not testify or appear at the trial. His wife, the moving spirit behind this litigation, was plaintiff’s primary witness. She related that in November 1968, she and other property owners in the vicinity of St. Roch Cemetery were notified of a city council meeting where the construction of a mausoleum in St. Roch Cemetery would be discussed. According to Mrs. Calico, she was reassured by representatives of the Archdiocese that the property owners would be compensated for any damage to their homes caused by the construction. Further she stated that the owner promised pictures would be taken of the house before construction commenced; however, this was not done. Therefore, the day before the first test piling was driven, she employed a photographer to take pictures of the interior and exterior of both houses for the purpose of establishing their excellent condition. The photographs tendered into evidence were snapshot size, too small and indistinct to have significant probative value.
Though the actual piles were driven in a four-day period and completed within 30 days of the taking of the pictures, no subsequent photographs were ever made of the same areas for comparative purposes to demonstrate the damage allegedly caused by this phase of construction.
Mrs. Calico said that for five years prior to the construction she and her husband had undertaken a series of repair and remodeling projects, including shoring and leveling of the house nearest the cemetery, that had restored their properties to an excellent condition. As a result of the vibration emanating from trucks hauling heavy equipment and materials to the job site and the pile-driving activities, the walls in their dwellings began to crack. In addition, acoustical and metal tiles fell from various ceilings,[3] paneling cracked and moulding was separated from the walls. Although she compiled an exhaustive list of damages, her testimony is vague as to when they became visible.
As to the causal connection between the driving piles and the property damage, Mrs. Calico’s testimony, if taken at face value, fails to limit the source of vibrations to the pile-driving operation. She also complained that trucks carrying heavy equipment caused the house to vibrate and in fact one of the delivery trucks hit her garage. The identities of the owners of the various offending trucks were not established nor were any of them made parties defendants in this proceeding.
No expert testimony was adduced by plaintiff to causally connect the damage to his properties with the vibrations from pile-driving operations.
Defendants produced affirmative evidence to establish the damages did not result from the pile-driving phase of construction. Ed Zbylot, an engineer em *170 ployed by one of defendant’s insurers, testified he conducted tests with a seismographic type instrument, the Excellograph, designed to measure the intensity of vibrations from the driving of piles.
Three tests were made — the first two at the time the test piles were driven on December 10, 1968, and the third on January 9, 1969, when the permanent piling was sunk. Readings were made 1 to 3 feet from the piling itself, being the closest points to the tomb structures. He testified that through experimentation and actual practice the accepted caution zone energy ratio is 3, which was reduced to 1.4 to allow for the weakened condition of the structures due to settling or other foundation movement. His highest reading on December 10 was .123, and on January 9, it was .314, approximately Y% and i/3 respectively of the caution zone for vibration intensity. Projecting the reading of January 9 for a distance of SO feet under the Inverse Square Law, the energy ratio at plaintiff’s property line is .00013. In essence he stated that vibrations from pile-driving activity could not have caused the damage claimed by plaintiff.
Murvan Maxwell, an architect, examined the properties in January 1970. He noted the houses were built in the eary 1900s on piers, and that while the damage was extensive, it could have resulted from a combination of factors, i.e., the shoring and leveling, damage from hurricanes in 1965 and 1969, and extremely poor workmanship in remodeling. He pointed out that while the plaster was cracked at many points throughout the houses, it was uncharacteristic of the damage resulting from pile-driving vibrations, which usually causes patches of plaster to fall from the ceiling. This type of damage was not observed in plaintiff’s houses. He further noted assuming that there was sufficient vibration to cause damage to the plaster, once the driving of piles stopped there should be no further manifestation of additional damage to the plaster.
Other witnesses affirmatively showed that (1) there was inconsequential damage to the tombs within several feet of the pile-driving operation; (2) plaintiff was the only claimant in the neighborhood who complained of any damage whatsoever from the pile-driving operation; and (3) plaintiff’s property was 78 feet from the closest point of construction.
The weight of the evidence is to the effect that the pile-driving operation did not produce vibrations that could have damaged plaintiff’s houses. We think Mrs. Calico’s testimony, coupled with that of a few neighbors stating they felt vibrations while standing outside her home when the driving of piles was in progress, is insufficient to prove the requisite causal connection, particularly in view of the expert testimony of Mr. Zbylot that a human being can detect Jioo of the vibration that would cause damage to plaster — the weakest of construction material.
Nor does the absence of plaintiff himself strengthen his case. He is employed as a salesman for a New Orleans ice cream company and, when he was called to testify under the act by one of the defendants, it was explained he was at work. Presumably he was in New Orleans. Mrs. Calico stated her husband was working at all times when the house was vibrated by pile-driving operations. While this may be true, he did have knowledge of the condition of his home before and after construction and perhaps could have stated with more clarity when the alleged damages manifested themselves. His failure to testify, under the circumstances, creates a presumption his evidence would not be helpful to his claim. Gulf States Utilities Company v. Guidry, 183 So.2d 122 (La.App. 1st Cir. 1966).
*171 For the reasons assigned, the judgment appealed from is affirmed, all costs to be borne by the appellant.
Affirmed.
REDMANN, J., concurs with written reasons.

. Misnomer changed.

. game as Footnote 1.

.Mrs.. Calico stated that the tiles in the kitchen fell at the end of 1969 and in the bathroom in August or September of 1970. The pilings were driven during a four-day period in January of 1969.