WICKER, Judge.
This appeal arises from a petition for damages filed on behalf of plaintiffs/appellants, Maria Sanchez, wife of/and Carlos Sanchez, against defendants/appellees, Boh Brothers Construction Company, Inc. and the Parish of Jefferson. The plaintiffs sought damages allegedly caused by construction work performed by Boh Brothers pursuant to a contract with Jefferson Parish. The trial judge rendered judgment in favor of the defendants and dismissed the suit. We affirm.
Mr. and Mrs. Sanchez purchased their home at 6301 Morton Street in 1979. In October, 1988 Boh Brothers began the renovation of an existing pumping station located in front of the Sanchez home and that of a next door neighbor. By January, 1989 only the clean-up work was performed. Mr. Sanchez filed a written complaint with Boh Brothers on February 28, 1989 alleging the following damage as the result of construction:
Cracks in the walls of living room, daughters [sic] bedroom, separation of window from frame in the kitchen, and a [sic] unleveling of the house in which there is a definite drop, to one side of the house.
The trial judge concluded “there was no evidence presented which proves that any conduct of the defendants caused the damage to the plaintiffs property.” The threshold issue is whether the trial judge was manifestly erroneous in so concluding.
The appellants have specified the following errors:
1. The trial court erred as a matter of law in not finding that the testimony of lay witnesses, which established that for twenty-six (26) years the plaintiff’s home was level but sank markedly to the rear after defendants’ work began, established a presumption that the work caused the damages;
2. In this case brought under La.C.C. art. 667, the trial court erred as a matter of law in finding that where the defendant presents an expert at trial it is incumbent upon the plaintiff to present expert testimony to rebut such testimony, and
3.The trial court manifestly erred in finding that the witness’ testimony disagreed as to when the damage to the home was first noticed.
We note at the outset that we disagree with the appellants’ contention the trial judge required them to present expert testimony. The trial judge did state in his reasons:
Plaintiffs failed to produce an expert to rebut defendant expert’s testimony and thereby failed to prove a link between the construction and any subsidence to the home.
However, we have read his entire reasons for judgment and are convinced reading that statement in connection with his entire reasons shows the trial judge placed no such requirement on the plaintiffs. The reasons presented below evidence the concern on the part of the trial judge that causation had not been proven by the lay witnesses and that expert testimony would have been persuasive. The trial judge wrote:
On or about October, 1988, defendant, Boh Brothers began construction of a pump station near plaintiff’s home. Defendants produced an expert at trial who stated there was no probability that the construction work caused the plaintiffs’ home to subside. Plaintiffs failed to produce an expert to rebut defendant expert’s testimony and thereby failed to prove a link between the construction and any subsidence to the home.
Further, evidence produced at trial indicated that the area in which the plaintiff’s home was located suffered from subsidence.
Additionally, the plaintiffs and the witnesses’ testimony all conflict as to the time when the damage to the home was noticed.
This Court finds that there was no evidence presented which proves that any conduct of the defendants caused the damage to the plaintiffs property.
Based on the foregoing the Court finds in favor of Boh Brothers and the Parish *14 of Jefferson, dismissing plaintiffs’ claims against these defendants, [emphasis added].
The trial judge correctly noted the inconsistent testimony on the part of the plaintiffs and their witnesses. At trial the following colloquy occurred during cross examination of Mr. Sanchez:
Q. Isn’t it a fact, Mr. Sanchez, that you don’t really know when this settlement started, do you? All you know is when you first noticed it, correct?
A. Of course.
Q. You don’t know when it started?
A. You know?
Q. Well, I’m asking you the question, sir. You don’t know, do you?
A. Nobody knows [emphasis added].
Mr. Sanchez testified during the years he lived in the house he had made no inspection for cracks. He first noticed cracks in his house when Boh Brothers started work on his street. He gave no date he first noted the leaning but said it was “later on.” He noticed doors closing on their own in October, November or December of 1988. Although he stated he complained to Boh Brothers in December, 1988, his complaint introduced into evidence, was dated and signed by him February 28, 1989. He admitted the written complaint was his Boh Brothers’ complaint.
Mrs. Sanchez also admitted she never inspected the house for cracks before the construction. She stated her husband complained to Boh Brothers a few days after the cracks were noticed. Although she testified she did not notice the back of the house was leaning until her daughter’s friend pointed it out, she did not state when this was pointed out to her, whether before or after the construction.
Christina Sanchez, Mr. and Mrs. Sanchez’ 16 year old daughter, testified around 1988 or 1989 a friend named Melissa brought to her attention for the first time that the house was leaning toward the rear. Melissa came over to her house at least once a year since 1983 or 1984.
Christina could not give a specific date as to when her friend enlightened her.
Jean Marie Allen, a neighbor living one house away from the Sanchez home, testified she had visited the home about five times a year over a 13-year period. She did not notice the house leaning toward the back until January, 1989.
The trial judge evidently concluded the plaintiffs failed to establish consistency on the part of themselves and the witnesses as to when the damage was noticed. Mr. Sanchez admitted he did not know when settlement started. Both he and his wife never inspected for cracks before the construction. Christina Sanchez could not give a definite time other than 1988 or 1989 as to when her friend pointed out the leaning to her. Allen testified she noticed the leaning in January, 1989.
The trial judge also reasoned that even if the plaintiffs had been consistent in establishing a time for the damage they had failed to prove causation. The record is devoid of any evidence of causation except for that of the defense expert.
John L. Pfeffer, an expert in the field of civil engineering, vibration, and differential settlement, testified as follows: Subsidence is a common problem in this particular area. It occurs even in houses on pilings. He inspected the Sanchez home on January 25, 1991. He measured the area from the cofferdam to the front corner of the house. This was over 25 feet. He also measured the distance to the rear. It was over 50 feet. He walked through the house. The house had subsided more to the rear than to the front. He stated that a house two doors down from the Sanchez home had subsided eight inches more at the rear. In that case the pilings had “gone down due to the lack of supporting soil in the first 20 feet or so underneath the house.” He explained:
it’s just my observation that houses in that area, particularly due to the eight-foot depth of the organic material underneath the house — it’s called peat, but it is really rotten moist grass, rotten stumps, slivers of rotten wood — and as that area is drained over the years, that organic material rots and resulting loss in volume causes subsidence.
*15 He did not know whether the Sanchez house was on pilings.
He testified that in order for the Sanchez house to suffer cracks from vibration the house would have to be within eight feet of the hammer. He concluded it was impossible for the Sanchez house to suffer damage due to vibration based on its distance from the pile driving activity, i.e. the cofferdam. While the vibration at a distance of 30 feet would be unpleasant for humans it would cause no damage to the house. In his opinion, the problems with the Sanchez home were a “natural consequence of the soil problems in the area.” Moreover, he saw no logical explanation for the construction at the front of the house causing subsidence in the rear.
He heard the testimony of Lenny Krupp, III, a Boh Brothers’ superintendent, who oversaw the job. Krupp described the manner in which the cofferdam was built. Pfeffer stated “there would be no possibility that water would seep from the area of this house over 30 feet away into the caisson.” He opined the pumping of the water did not cause the subsidence of the house. Furthermore, he stated that if the construction had caused the subsidence then the front of the house would have subsided more than the rear.
Mrs. Sanchez admitted dirt had to be brought in “every year or every other year due to settlement.” She stated mud had even been placed under her house.
The record is devoid of any showing of negligence on the part of the parish or Bob Brothers. Nevertheless, in D’Albora v. Tulane University, 274 So.2d 825 (La.App. 4th Cir.1973), writ denied, 278 So.2d 504 (La.1973), the court explained at 829:
the absence of negligence on a piling subcontractor’s part is immaterial to his liability for damage caused by his pile-driving. Where causation is shown, the pile-driver’s fault, in performing work he knows could damage neighbors, obliges him to repair the damage.
[[Image here]]
Therefore, because liability arises not from negligence but from doing a work which (even well done) could damage the neighbor, everyone responsible for causing the work to be done is liable; owner, contractor, subcontractor ...
In Calico v. Employers’ Liability Assurance Company, 284 So.2d 168 (La.App. 4th Cir.1973), writ denied, 286 So.2d 365 (La. 1973) the plaintiff filed an action alleging damages to two houses caused by vibrations from pile driving. He sued the owner of the property under construction, the contractor and the sub-contractor. Suit was pursuant to La.Civ.Code arts. 667 and 2315. The court held that under either of these articles the plaintiff must establish causation. See also Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (La.1973) requiring proof of causation for an article 667 claim. Although there was testimony that walls had cracks the testimony was “vague as to when they became visible.” Id. at 169. In the instant case, as well as in Calico there is testimony that no one else in the neighborhood complained of damage from the construction. Krupp testified he did not receive any complaints of cracks or settling from the owners of the house located next to the Sanchez home. He stated that house was actually closer to the cofferdam than the Sanchez house.
Furthermore, the Louisiana Supreme Court has held in Tadin v. New Orleans Public Service, 226 La. 629, 76 So.2d 910 (La.1954) it would not apply the doctrine of res ipsa loquitur when causation had not been proven. The Tadin case was a suit alleging cracks in a home cause by vibration in the breaking up of concrete.
We find no manifest error in the trial judge’s concluding causation had not been proven. The only testimony as to causation was from the defense expert who testified that the construction activity did not cause the settlement and cracking problems. Appellees argue the record establishes that the house was level prior to the construction and only started leaning after the construction. However, the record does not support this conclusion. Mr. Sanchez admitted “nobody knows” when the settlement started. The construction be *16 gan around October, 1988. However, Mr. and Mrs. Sanchez admitted the rear yard was low when they bought the house in 1979. Mr. Sanchez testified in 1983 one room in the rear of the house flooded with water approximately 1½ feet high. Mrs. Sanchez admitted dirt had been brought in every year or every two years due to settlement. The trial judge evidently concluded there were problems with tilting to the rear as early as 1983.
Accordingly, for the reasons stated, the judgment dismissing plaintiffs’ claims is affirmed at appellants’ cost.
AFFIRMED.
GOTHARD, J., dissents with written reasons.