Dorthea aka Doris **BERNBACH**,
et al., Plaintiffs,

v.

**TIMEX CORP., et al., Defendants.**

No. CIV. 3:94CV224 (JBA).

United States District Court,
D. Connecticut.

Sept. 30, 1996.

James Twaddell, Levy & Droney, P.C., Farmington, CT, Timothy T. Corey, Reed D. Rubinstein, Pepe & Hazard, Hartford, CT, Richard P. Renehan, Jeffrey J. Tinley, Tinley, Nastri, Renehan & Dost, Waterbury, CT, Daniels, Blinn, Consumer Law Group, Rocky Hill, CT, for Plaintiffs.

James K. Robertson, Jr., John D. Yarbrough, Jr., Carmody & Torrance, Waterbury, CT, Frank T. Judge, III, Timex Corp., Middlebury, CT, David J. Veglinte, Carmody

& Torrance, New Haven, CT, Jonathan W. Redway, Howrey & Simon, Washington, DC, Steven L. Leifer, David A. Super, Baker & Botts, Washington, DC, for Defendant Timex Corp.

Eric Lukinbeal, Thomas P. Cody, Robinson & Cole, Hartford, Francis J. Brady, Michael J. Donnelly, James J. Reardon, Jr., Murtha, Cullina, Richter & Pinney, Hartford, CT, for Defendant Roy F. Weston, Inc.

Gary Scott Klein, Benanti & Associates, Stamford, CT, Steven L. Leifer, David A. Super, Baker & Botts, Washington, DC, for Defendant Middlebury Office Park Ltd. Partnership.

### RULING ON MOTIONS TO DISMISS
#### (Docs. 18, 23, 25, 72, & 98)

ARTERTON, District Judge.

Plaintiffs are owners of residential property adjoining a long-time manufacturing facility of defendant Timex Corporation in Middlebury, Connecticut. In 1989, Timex undertook an environmental evaluation of the facility and allegedly discovered groundwater contamination by a variety of hazardous substances. Timex did not notify governmental authorities or adjoining property-owners of this contamination, but retained defendant Roy F. Weston, Inc. ("Weston"), an environmental consulting firm, for further assessment of site and development of a remediation workplan. In 1990, Timex informed EPA of its concerns about the site and its intention to initiate remediation pursuant to Weston's recommendations. Plaintiffs allege that subsequently Timex and Weston conspired to provide misleading reports to EPA and the state Department of Environmental Protection ("DEP") in order to avoid the requirements of the National Contingency Plan and minimize Timex's liability for cleanup expenses.

Timex allegedly performed no testing of groundwater in the residential neighborhood adjoining the site until 1992, although Timex stopped using wells for its own drinking water needs by 1991. The wells of plaintiffs Lemoine, Marsh, Narciso, and Sundholm ("Tier One plaintiffs") were found to be contaminated. The remaining plaintiffs ("Tier Two plaintiffs") live in homes in close proximity to contaminated property. After news of the contamination became public, plaintiffs allegedly suffered the following injuries: diminution in value or unmarketability of their homes; emotional distress and physical manifestations of distress; and expenses associated with the need to use bottled water for drinking and bathing. Furthermore, Tier One plaintiffs have allegedly suffered exposure to contaminated water and some claim physical injuries as a result.

Timex has negotiated a consent decree with DEP calling for periodic testing of all plaintiffs' drinking water wells; however, plaintiffs assert that the consent decree is inadequate and will not result in sufficient testing or remediation to prevent ongoing injury. Plaintiffs allege numerous continuing violations of federal regulatory standards at the site, which is presently owned and operated by defendant Middlebury Office Park Limited Partnership (MOP).

Plaintiffs' First Amended Complaint asserts eighteen counts against Timex, MOP, and Weston (although, due to an apparent clerical oversight, the counts are numbered up to nineteen). Counts One and Two present claims against Timex and MOP under CERCLA. Counts Three to Ten present various state-law claims against Timex; the remaining counts present substantially similar state-law claims against MOP and Weston. Defendants move for dismissal of some of the state-law claims in their entirety and dismissal of others as to the Tier Two plaintiffs. Defendants further seek to exclude recovery under CERCLA for certain categories of costs, and request that this Court decline to exercise supplemental jurisdiction over plaintiffs' state-law claims.

*Standards for Motion to Dismiss*

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's favor. The complaint may be dismissed only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citations omitted),

*cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994). In deciding a motion to dismiss for failure to state a claim, "[t]he issue is not whether the Plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

*Count 1: CERCLA §§ 107 & 113*

■ Plaintiffs seek recovery of response costs consistent with the NCP against Timex and MOP under CERCLA § 107, as well as a declaratory judgment that Timex and MOP will be liable for contribution under CERCLA § 113 in the event that plaintiffs themselves become the subject of a cost-recovery action. Timex seeks to dismiss plaintiffs' § 107 action insofar as it encompasses claims for attorneys fees and medical monitoring costs. Plaintiffs agreed on the record on September 26, 1996, that they are not entitled to attorneys fees. The Court finds that plaintiffs are not entitled to medical monitoring costs except insofar as plaintiffs can show that the purpose of the monitoring is to determine the existence or extent of a release of hazardous substances or the efficacy of a removal or remedial action. *See* 42 U.S.C. § 9601(23–25). However, plaintiffs may not recover as "response costs" those medical monitoring expenses that are directed solely towards assessing and safeguarding their own health. *See Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1537 (10th Cir.1992).

*Count 2: CERCLA § 113*

■ In addition to their claim for declaratory judgment under § 113 in Count 1, plaintiffs bring a separate § 113 contribution claim in Count 2. However, plaintiffs do not allege that they are now or ever have been the subject of a § 107 cost recovery action. Plaintiffs have plainly failed to state a claim for relief under § 113, which provides, "Any person may seek contribution . . . *during or following any civil action under section 9606 of this title or under section 9607(a) of this title.*" Without an allegation of an ongoing or past cost recovery action, the § 113 claim

must be dismissed as inadequately pled. To the extent plaintiffs merely seek a prophylactic against future § 107 actions, such protection may be provided by the § 113 declaratory judgment sought in Count 1.

*Count 3: Strict Liability Against Timex*

■ Plaintiffs claim that Timex should be strictly liable for any harm it has caused because its activities were inherently dangerous. In order to sustain a claim for strict liability, plaintiffs must show:

[1] an instrumentality capable of producing harm; [2] circumstances and conditions in its use which, irrespective of a lawful purpose or due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and [3] a causal relation between the activity and the injury for which damages are claimed.

*Caporale v. C.W. Blakeslee & Sons, Inc.,* 149 Conn. 79, 85, 175 A.2d 561 (1961). Defendants move to dismiss Count 3 on the grounds that plaintiffs have failed to show that any of Timex's activities satisfy the second requirement.

■ The question of whether an activity is abnormally dangerous is generally a question of law for the court to decide. *Id.* at 86, 175 A.2d 561. The Connecticut Supreme Court has never ruled on whether the storage, disposal, and failure to clean up hazardous wastes may constitute an abnormally dangerous activity subject to strict liability. However, the Court is persuaded that, if given the opportunity, Connecticut would not extend strict liability to the activities complained of in the present case. While the Court is unwilling to rule categorically that the handling of hazardous wastes may never give rise to strict liability, the Court finds that plaintiffs have failed to allege "circumstances and conditions" in Timex's activities such that, "irrespective of due care," the activities "involve a risk of probable injury to such a degree that [they] fairly can be said to be intrinsically dangerous." *See Arawana Mills Co. v. United Technologies Corp.,* 795 F.Supp. 1238, 1252 (D.Conn.1992) (Cabranes, J.). Plaintiffs allegations include claims of

negligent, if not reckless, behavior on the part of Timex, but the complaint is devoid of allegations that could support a finding that the substances stored and disposed of by Timex are so inherently dangerous that the risk of probable injury may not be eliminated by the exercise of due care. *See Connecticut Water Co. v. Town of Thomaston,* 1996 WL 168051, *8 (Conn.Super.1996). Therefore, Count 3 is dismissed.

*Count 4: Negligence Against Timex*

■ Timex moves to dismiss Count 4 as to the Tier Two plaintiffs, claiming that Connecticut law precludes recovery in a negligence action for emotional distress or loss of property value without actual physical impact in some form. The Court does not find the law of Connecticut to be so rigid as to preclude recovery absent physical impact regardless of the imminence of impact and the degree and nature of emotional distress. *See, e.g., Montinieri v. Southern New England Telephone Co.,* 175 Conn. 337, 345, 398 A.2d 1180 (1978) ("[R]ecovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact."). The Court cannot conclude at present "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hernandez,* 18 F.3d at 136. Therefore, Timex's motion to dismiss Count 4 as to the Tier Two plaintiffs is denied.

*Count 5: Negligence Per Se Against Timex*

■ Plaintiffs allege that Timex has violated various provisions of state and federal environmental statutes and that, accordingly, Timex is subject to liability under the doctrine of negligence per se. In order to state a claim for negligence per se for violation of a statutory provision, "the plaintiff must be within the class of persons protected by the statute" and "the injury must be of the type the statute was intended to protect." *Gore v. People's Savings Bank,* 235 Conn. 360, 375–76, 665 A.2d 1341 (1995) (citations omitted). Timex argues that Count 5 should be dismissed because the statutes at issue do not create private causes of action. However,

Connecticut law does not require the legislature expressly to create a private cause of action in order for statutory duties to become superimposed on general duties of care. *See id.* at 381–82, 665 A.2d 1341 (upholding negligence per se action for violation of lead-paint standards based on legislative history and implicit intent of statute). As *Gore* demonstrates, the question of whether a statute creates an actionable common-law duty rests on whether the plaintiff and the injury complained of were the contemplated targets of the legislature's enactment.

■ Because the parties have not presented their arguments on Count 5 in a manner that distinguishes between the several statutory provisions that Timex is alleged to have violated, the Court will construe Timex's motion as presenting general claims that CERCLA, RCRA, and the Connecticut Water Pollution Control Act (WPCA) do not permit causes of action for negligence per se. First, as to the WPCA, the Court is persuaded by the reasoning and the number of Connecticut cases cited by Timex that indicate that the legislature did not intend to provide private parties with negligence per se actions for violation of the statute. *See, e.g., Town of Thomaston,* 1996 WL at *1–4, *Chromium Process Co. v. Yankee Gas Service Co.,* 1995 WL 404987, *3–4, 1995 Conn.Super. LEXIS 1895, *9–10 (1995). Plaintiffs have presented nothing in the statute's legislative history that would serve to undermine the conclusions reached in the cases cited by Timex. In contrast, plaintiffs have pointed to aspects of the legislative history of the federal statutes indicating that they were intended to prevent the sorts of harms alleged from befalling the neighbors of hazardous waste sites. Timex has provided no persuasive authority indicating otherwise. Therefore, the Court grants Timex's motion to dismiss only insofar as Count 5 is premised on violations of the WPCA.

*Count 6: Nuisance Against Timex*

■ As with Count 4, Timex moves to dismiss Count 6 with respect to the Tier Two plaintiffs in that these plaintiffs have suffered no invasion of their property. However, the case of *Jack v. Torrant,* 136 Conn.

414, 71 A.2d 705 (1950), makes clear that physical invasion is not the *sine qua non* of a nuisance action in Connecticut. However *Torrant* may have been limited by *Nicholson v. Connecticut Half–Way House, Inc.*, 153 Conn. 507, 218 A.2d 383 (1966), the Court cannot conclude that plaintiffs "can prove no set of facts in support of [their] claim which would entitle [them] to relief." Timex's effort to distinguish *Torrant*, based on the fact that the *Torrant* plaintiffs were made "physically uncomfortable" by the neighboring undertaking business, is unpersuasive. The Tier Two plaintiffs claim that the alleged nuisance has caused them to suffer various physical manifestations of emotional distress. Construing "all reasonable inferences" in plaintiffs' favor, as must be done at the motion to dismiss stage, the Court finds that plaintiffs have stated a claim that falls within the ambit of *Torrant*. Therefore, Timex's motion to dismiss Count 6 is denied.

*Count 7: Trespass Against Timex*

Timex has not moved to dismiss Count 7.

*Count 8: Common–Law Conspiracy Against Timex*

Plaintiffs allege a combination between Timex and Weston in order to limit the nature and extent of Timex's cleanup obligations. Plaintiffs further allege several unlawful acts committed pursuant to this scheme which resulted in damage to themselves. These allegations mirror the elements for a civil action for conspiracy as set forth in *Williams v. Maislen*, 116 Conn. 433, 437, 165 A. 455 (1933).

In moving to dismiss Count 8, Timex relies on *Marshak v. Marshak*, in which the Connecticut Supreme Court observed, "[T]here is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself." 226 Conn. 652, 669, 628 A.2d 964 (1993) (quoting *Cole v. Associated Construction Co.*, 141 Conn. 49, 54, 103 A.2d 529 (1954)). Taken out of context, this language may seem to preclude plaintiffs' claim in Count 8; however, neither *Marshak* nor *Cole*, on which *Marshak* relied, are intended to overturn *Williams*. Indeed, *Marshak* quotes with approval the *Williams* formulation of the civil action for conspiracy. 226 Conn. at 665, 628 A.2d 964. *Marshak* does not challenge the proposition that civil liability may arise from unlawful acts committed in furtherance of a conspiracy. Rather, *Marshak* simply underscores that *unlawful* acts are a necessary predicate to an action for civil conspiracy: the *Marshak* court held in favor of the defendant because all of the actions taken by the defendant during the time of his involvement in the conspiracy were lawful. The language quoted above merely states that conspiracy alone (i.e., combination to do unlawful acts or lawful acts by unlawful means) does not constitute a viable predicate for a civil conspiracy claim; unlawful acts must actually be committed pursuant to the conspiracy. Plaintiffs have alleged unlawful acts; therefore, *Marshak* is not controlling of the present case, and Timex's motion to dismiss Count 8 is denied.

*Count 9: CUTPA Against Timex*

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110b(a). Trade and commerce are defined as:

> the advertising, sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state.

Conn. Gen.Stat. § 42–110a(4). Plaintiffs have failed to allege any unfair or deceptive acts or practices in the conduct of any trade or commerce on the part of Timex. Plaintiffs have not claimed, much less provided any supporting factual allegations, that Timex's storage and disposal of hazardous substances constituted "trade or commerce" within the meaning of CUTPA. Plaintiffs have merely alleged that "Timex is engaged in commerce"; however, the statute plainly requires that the acts complained of be committed "in the conduct" of trade or commerce. The storage and disposal of hazardous substances that are generated incident to manufacturing activities cannot give rise to CUTPA liability. *See Barnes v. General*

*Electric,* 1995 WL 447904, *6, 1995 Conn.Super. LEXIS 2132, *30 (1995). Therefore, Timex's motion to dismiss Count 9 is granted.

*Count 10: CERCLA Citizen Suit Against Timex*

Pursuant to the colloquy on the record of April 10, 1995, plaintiffs have withdrawn Count 10.

*Counts 11 & 12: Negligence and Nuisance Against MOP*

MOP moves to dismiss Counts 11 and 12 as to the Tier Two plaintiffs. For the reasons stated *supra* in reference to Counts 4 and 6, MOP's motion is denied.

*Count 13: None*

Like the elevators in some old buildings, the First Amended Complaint skips thirteen.

*Count 14: Trespass Against MOP*

MOP moves to dismiss Count 14 on the grounds that plaintiffs fail to allege that contaminants have migrated to their property since MOP has taken ownership of the facility. However, Paragraph 168 of the First Amendment Complaint, which was docketed subsequent to MOP's motion to dismiss, plainly alleges ongoing contamination. Therefore, the motion to dismiss Count 14 is denied.

*Count 15: Strict Liability Against MOP*

In reference to Count 3, the Court concluded that Timex's storage and disposal of hazardous substances did not constitute an ultrahazardous activity. *A fortiori,* MOP's failure to remediate the mess allegedly left behind by Timex cannot constitute an ultrahazardous activity; indeed, properly speaking, a failure to remediate is not an "activity" at all.

*Count 16: Negligence Against Weston*

In Count 16, plaintiffs contend that Weston acted negligently in not reporting the true scope of the contamination at the site to the authorities or the plaintiffs, in failing to "require" testing of plaintiffs' well water before July 1992, and in generally disregarding the health and well-being of plaintiffs. Weston argues that Count 16 should be dismissed because it did not owe a duty to the plaintiffs, its actions did not cause the plaintiffs' injuries, and Connecticut does not recognize a third-party cause of action for negligence against professionals.

"The existence of a duty is a question of law." *Shore v. Town of Stonington,* 187 Conn. 147, 151, 444 A.2d 1379 (1982). Neither Weston nor the plaintiffs cite any Connecticut case law delineating the duties of environmental consultants to private third-parties. Weston relies on three cases from other jurisdictions. In *Stoppleworth v. RMT, Inc.,* No. 88–cv–3421 (July 31, 1990) (Cir.Ct.Wis.), an environmental consultant was found to have no duty to insist on more extensive testing of a contaminated site because state environmental authorities had primary responsibility to protect the public and the consultant had fully complied with the orders of these authorities. In *Midwest Aluminum Mfg. Co. v. General Electric Co.,* 1993 WL 725569, 1993 U.S. Dist. LEXIS 4463 (W.D.Mich.1993), an environmental consultant was found to have no duty to an adjoining landowner because there is no requirement "that an agent of one neighbor has a duty owed to another neighbor without some sort of an affirmative action taken by the agent." *Id.* 1993 WL at *6, 1993 U.S. Dist. Lexis at 22. In *Brooks v. A. Gatty Service Co.,* 127 A.D.2d 553, 511 N.Y.S.2d 642 (1987), the court found that engineers who inspected a piece of equipment owed no duty to a construction worker later injured by the equipment absent an affirmative act of negligence.

Plaintiffs have identified no cases in which there has been found a general duty on the part of engineers or consultants to undertake affirmative actions to benefit third parties. Rather, plaintiffs present a novel argument that somehow Weston assumed a duty to plaintiffs by agreeing to prepare reports in compliance with "RCRA protocols." In support of the claim that Weston agreed to abide by "RCRA protocols," plaintiffs cite only to a passing remark in Timex's Memorandum; the claim is not made in the complaint and Weston denies such an agreement. In any event, even if such an agreement could be considered to exist for purposes of a motion to dismiss, plaintiffs have cited no case law

suggesting that "RCRA protocols" impose legal duties on consultants to third parties.

Alternatively, plaintiffs argue that Weston's duty is founded on Conn. Agencies Regs. § 20–300–12(a)(1), which states that an engineer's "primary obligation" is to protect the safety, health, and welfare of the public. Plaintiffs argue that this regulation, part of a code of ethics promulgated by the State Board of Examiners for Professional Engineers and Land Surveyors, requires engineers to "blow the whistle" on clients who are endangering the public. Plaintiffs offer no case law or legislative history in support of this argument.

In assessing the nature of Weston's duties, the Court finds guidance in the Connecticut case law dealing with the liability of lawyers and accountants to third parties. As to attorneys, the Connecticut Supreme Court has held that, "Determining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy. In addressing this issue, courts have looked principally to whether the primary or direct purpose of the transaction was to benefit the third party." *Krawczyk v. Stingle*, 208 Conn. 239, 245–46, 543 A.2d 733 (citations omitted). For instance, an attorney may be liable to the beneficiary of a will for negligence in will-drafting. *Stowe v. Smith*, 184 Conn. 194, 441 A.2d 81 (1981). Weston argues, however, that its relationship to the plaintiffs is quite difference; it was not retained by Timex with the "primary or direct purpose" of benefitting the plaintiffs.

As to accountants, one Connecticut court has held that third-party liability for negligence in preparing a financial statement must be premised on an understanding that the third party would rely on the statement. *Twin Manufacturing Co. v. Blum, Shapiro & Co.*, 42 Conn.Supp. 119, 602 A.2d 1079 (1991) (Corrigan, J.). No such allegation is made in the present case with respect to the reports prepared by Weston.

The Court cannot conclude that environmental consultants and engineers may never be under a duty to undertake affirmative actions on behalf of third parties. However, in light of the case law from other jurisdictions cited by Weston, as well as the Con-necticut case law concerning the liability of lawyers and accountants to third parties, the Court is persuaded that the Connecticut Supreme Court would impose substantial limitations on the potential third-party liability of environmental consultants and engineers. In particular, the Court finds the reasoning of the *Stoppleworth* case to be compelling and applicable. Plaintiffs concede that DEP was "on the scene" before Weston was retained. Whatever affirmative legal duties to plaintiffs that Weston might have had if it had been retained before DEP became involved with the Timex site, those duties never actually materialized in the present case. Therefore, Weston's motion to dismiss Count 16 is granted.

*Count 17: Negligence Per Se Against Weston*

Plaintiffs claim that Weston's alleged violations of various statutory requirements to report releases of hazardous substances, as well as Weston's violation of the engineer's code of ethics, subjects Weston to liability under the doctrine of negligence per se. However, plaintiffs do not properly allege violations of the reporting laws because these laws only apply to "any person in charge" of a facility, 42 U.S.C. § 9603(a); owners and operators, 42 U.S.C. § 9603(c); and "the person in charge of any establishment," Conn. Gen.Stat. § 22a–450. Weston is not alleged in the First Amended Complaint to belong to any of these categories; therefore, the alleged violations do not adequately state claims of negligence per se. Additionally, as the Court held in reference to Count 5 *supra*, violations of Conn. Gen.Stat. § 22a–450 do not give rise to liability under the doctrine of negligence per se.

As to the alleged violations of the ethical code, plaintiffs have cited no case law or regulatory history suggesting that this code was intended to impose actionable common-law duties on engineers. Rather the code is part of broader set of regulations establishing rules and standards for the issuance, suspension, and revocation of professional licenses for engineers and land surveyors. The Court finds that the code is intended to aid the State Board of Examiners for Professional Engineers and Land Surveyors in po-

licing the engineering profession, and not to provide common-law duties. Similarly, numerous Connecticut courts have found that the standards and requirements of the Water Pollution Control Act are intended to aid the DEP in the assessment of penalties, and not to create a private cause of action. *See, e.g., Michael v. Kenyon Oil Co., Inc .,* 4 C.S.C.R. 337, 338 (1989) (O'Connor, J.); *Andrews v. Caron Brothers,* 1992 WL 67396, *2–3, 1992 Conn.Super. LEXIS 870, *5–6 (McWeeny, J.). Thus, the Court concludes that violation of the code does not satisfy the requirements set forth in *Gore,* 235 Conn. at 375–76, 665 A.2d 1341, for a cause of action sounding in negligence per se.

Notwithstanding plaintiffs' vague allusion to other statutory and regulatory violations on the part of Weston, the Court cannot determine with any specificity from the face of the complaint the existence and nature of these violations. Therefore, Count 17 is dismissed.

### Count 18: Civil Conspiracy Against Weston

For the reasons set forth in reference to Count 8 *supra,* Weston's motion to dismiss Count 18 is denied.

### Count 19: CUTPA Against Weston

In moving to dismiss Count 19, Weston relies on the Connecticut Supreme Court's decision in *Jackson v. R.G. Whipple, Inc.,* 225 Conn. 705, 627 A.2d 374 (1993). The *Jackson* court seemed to suggest that CUTPA liability was predicated on consumer relationships, which, notwithstanding plaintiffs' creatively expansive understanding of "consumer," are plainly not present in this case. Since *Jackson,* the Supreme Court has clarified that *Jackson* was not intended to limit CUTPA to consumer relationships. *Larsen Chelsey Realty Co. v. Larsen,* 232 Conn. 480, 498–99, 656 A.2d 1009 (1995). However, *Larsen* does not indicate that CUTPA liability may attach in the context of any relationship, no matter how distant or indirect. Rather, *Larsen* simply clarifies that CUTPA extends to misconduct in the course of competitive practices. *Id.* at 497–98, 656 A.2d 1009. The Court concludes that CUTPA liability can only arise when there is some form of commercial nexus—business competition, consumer relationships, or similar connections—linking the parties. No such nexus has been alleged in the present case. Therefore, Count 19 is dismissed.

### Supplemental Jurisdiction

Timex argues that the state-law claims directed against it substantially predominate over the federal-law claims, and that consequently the Court should decline to exercise supplemental jurisdiction over the state-law claims. Timex's argument might have merit if Timex were the only defendant in the present action. However, there are two additional defendants, at least one of whom is subject to the Court's original jurisdiction due to its diversity with the Connecticut plaintiffs. In light of the nature and number of claims that would continue to be a part of the federal litigation even if the Court declined to exercise its supplemental jurisdiction, judicial economy would be ill-served by dismissing without prejudice the remaining state-law claims against Timex. Moreover, the fact that the present litigation has been pending in federal court for well over two years suggests that it would be unfair to force the plaintiffs to recommence the action in state court now. While the present case encompasses a number of apparently new claims under Connecticut law, particularly as regards Weston, these claims are not of such importance or complexity that comity dictates dismissal. In sum, the Court finds that the balance of relevant factors tips against Timex's motion. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988).

### Conclusion

For the foregoing reasons, Timex's Motion to Dismiss (Doc.# 18) is GRANTED in part and DENIED in part; Weston's Motion to Dismiss (Doc.# 23) is GRANTED in part and DENIED in part; MOP's Motion to Dismiss (Doc.# 25) is GRANTED in part and DENIED in part; Timex's Motion to Dismiss Count 9 (Doc.# 72) is GRANTED; and Timex's Motion to Dismiss Count 5 (Doc.# 98) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.