John K. McDONALD, et al., Plaintiffs,

v.

TIMEX CORPORATION and Middlebury Office Park Limited Partnership, Defendants.

No. CIV.A.3:97CV271(JBA).

United States District Court, D. Connecticut.

March 31, 1998.

Paul E. Pollock, Bai, Pollock & Coyne, Bridgeport, CT, for Plaintiffs.

James K. Robertson, Jr., John D. Yarbrough, Jr., Carmody & Torrance, Waterbury, CT, Baker & Botts, Washington, DC, for Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS [doc. 6]

ARTERTON, District Judge.

Plaintiffs are owners of residential property adjoining a long-time manufacturing facility of defendant Timex Corporation ("Timex") in Middlebury, Connecticut, at which Timex manufactured watches, watch parts and gyroscopes. Timex's manufacturing activities included metal finishing and electroplating operations involving the use of metals, as well as solvents to clean parts and equipment. On October 1, 1993, defendant Middlebury Office Park ("MOP") became owner and operator of the manufacturing facility, and is the current owner of that facility.

Plaintiffs allege that hazardous substances used in connection with the manufacturing process were stored and dumped at the facility, and that plaintiffs have incurred, and will incur in the future, response costs for investigation, analysis, and testing in order to identify the extent of the releases affecting their property. Plaintiffs filed this suit on February 13, 1997 alleging claims against Timex and MOP under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–9675 (First Count). Plaintiffs also bring common law claims against Timex for Strict Liability (Second Count); Negligence (Third Count), Nuisance (Fourth Count); Cost Recovery pursuant to Conn.Gen.Stat. § 22a–452 (Fifth Count), Reckless Misconduct (Sixth Count), Trespass (Seventh Count), and Nuisance pursuant to Conn.Gen. Stat. § 19a–337 (Eighth Count). Plaintiffs also bring claims against MOP for Nuisance (Ninth Count) and Trespass (Tenth Count).

Timex moves pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss plaintiff's claims against it for strict liability, reckless misconduct and nuisance per se, and both defen-

dants move the Court to decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims because they predominate over plaintiffs federal CERCLA claim. In deciding a motion to dismiss, the Court must construe in plaintiff's favor any well-pleaded factual allegations in the complaint. *Finnegan v. Campeau Corp.*, 915 F.2d 824, 826 (2d Cir.1990). The Court may dismiss the complaint only where it appears beyond doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## SECOND COUNT

Plaintiffs allege that Timex's actions in dumping and storing hazardous substances at the facility subject it to strict liability under Connecticut common law. Specifically, plaintiffs claim that Timex dumped toxic and carcinogenic wastes at the facility, failed to disclose that radioactive substances were used at the facility; failed to fully examine the nature and extent of the facility's contamination, failed to fully evaluate the health risk posed by the facility to area residents and adjacent landowners, failed to remediate or limit the spread of the hazardous substances, and failed to comply with government standards and regulations for the use, disposal and remediation of hazardous substances. (Second Count ¶ 5). Plaintiffs maintain that because Timex could not have eliminated the risk of harm resulting from its improper and illegal acts through the exercise of reasonable care, Timex, must be held strictly liable for damages to plaintiffs.

■ Maintenance of a strict liability claim requires proof of three factors: (1) an instrumentality capable of producing harm; (2) circumstances and conditions in its use which, irrespective of a lawful purpose or due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; (3) and a causal relation between the activity and the injury for which damages are claimed. *Caporale v. C.W. Blakeslee and Sons, Inc.*, 149 Conn. 79, 85, 175 A.2d 561 (1961). Further, "[a] person who uses an intrinsically dangerous means to accomplish a lawful end, in such a way as will necessarily or obviously expose the person of another to the danger of probable injury, is liable if such injury results, even though he [or she] uses all proper care." *Caporale*, 149 Conn. at 82–3, 175 A.2d 561 (citing *Worth v. Dunn*, 98 Conn. 51, 59, 118 A. 467 (1922)). Whether an activity is abnormally dangerous is a question of law for the court. *Id.* at 85, 175 A.2d 561; *Green v. Ensign–Bickford Co.*, 25 Conn.App. 479, 485, 595 A.2d 1383 (1991).

In *Bernbach, et al. v. Timex Corp.*, 989 F.Supp. 403 (D.Conn.1996), this Court dismissed an identical strict liability claim brought against Timex by adjacent landowners for the same storing and disposal activities alleged here. Relying on *Arawana Mills Co. v. United Technologies*, 795 F.Supp. 1238, 1252 (D.Conn.1992) (Cabranes, J.),[1] the Court held that the complaint was devoid of allegations that could support a finding that the substances stored and disposed of by Timex at the subject facility are so inherently dangerous that the risk of probable injury may not be eliminated by the exercise of due care. Although plaintiffs acknowledge this Court's decision in *Bernbach*, they attempt to distinguish it on the basis that they, unlike the *Bernbach* plaintiffs, allege that *dumping* of hazardous wastes at a manufacturing site imposes strict liability on Timex. Plaintiffs contend that *Bernbach* did not address the issue of whether allegations of actively dumping hazardous wastes on property could be considered to be an abnormally dangerous activity for which Timex could be strictly liable.

■ In *Bernbach*, however, the Court rejected plaintiffs' claim that "storage, *disposal*, and failure to clean up hazardous wastes" can constitute an abnormally dangerous ac-

---

**1.** *Arawana Mills,* concluded that although the Connecticut Supreme Court had not decided the issue of whether the storage and use of hazardous waste is a basis for strict liability, the court declined to expand the narrowly construed concept of "ultrahazardous" or "abnormally dangerous activity" to the storage and use of hazardous waste. *Id.* at 1252.

tivity subject to strict liability. 989 F.Supp. at 407 (emphasis added). Indeed, the *Bernbach* plaintiffs made extensive allegations that Timex dumped hazardous substances on the subject facility site. For example, in paragraph 82 of the *Bernbach* complaint (incorporated into Count Three alleging strict liability), plaintiffs alleged, *inter alia,* that (1) barrels of spent solvent were dumped down a bank at the rear of the facility into a wooded area used by residents; (2) untreated metal plating waste was discharged into a swale that drained into a small pond on others' property; (3) chemical and plaintiff wastes, and toxic and carcinogenic solvents were disposed of into a brook running through the facility and continuing onto others' property; (4) barrels of liquid toxic waste were poured onto the ground near the brook. (*Bernbach* Complaint, ¶ 82, Ex. 1 to Defs.' Reply). Thus, in concluding that the allegations made in the *Bernbach* plaintiffs' complaint could not support a finding that the substances stored and disposed of by Timex were so inherently dangerous that the risk of probable injury could not be eliminated by the exercise of due care, the Court considered allegations of dumping, very similar to those made by plaintiffs in this case. In sum, where plaintiffs here have alleged nothing that would distinguish this case from the analysis in *Bernbach,* plaintiffs' strict liability claim against Timex is dismissed.

### SIXTH COUNT

██ Plaintiffs allege that Timex's activities at the site constituted reckless misconduct under Connecticut common law. Recklessness is more than negligence, and more than gross negligence, that is, something more than a failure to exercise a reasonable degree of watchfulness to avoid injury to others. *Dubay v. Irish,* 207 Conn. 518, 532, 542 A.2d 711 (1988). Reckless conduct evokes "highly unreasonable conduct," involving "an extreme departure from ordinary care, in a situation where a high degree of danger is apparent," and must be more than any mere mistake resulting from "inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention." *Id.* at 533, 542 A.2d 711. Further, reckless conduct is a design to

injure either actually entertained, or to be implied from the conduct and circumstances. *Id.* Not only must the action producing the injury be intentional, but so must the resulting injury. *Id.*

Timex contends that the complaint fails to state a claim for reckless misconduct, but instead reiterates negligence allegations with the addition of the adjectives "recklessly" and "intentionally," which is insufficient to raise an actionable claim of reckless misconduct. *Sheiman v. Lafayette Bank and Trust Co.,* 4 Conn.App. 39, 46, 492 A.2d 219 (1985). Timex maintains that plaintiffs' claim of recklessness is merely a conclusion of law in the absence of sufficient facts to support it. *Id.*

██ This case is distinguishable both from *Sheiman,* 4 Conn.App. 39, 492 A.2d 219 (bank's wrongful payment of check), and *Ellison v. Scott,* No. CV 960561257S, 1997 WL 15387 (Conn.Super. Jan.8, 1997) (Wagner, J.) (police officers' release of potentially dangerous dog), cited by defendant, in which plaintiffs' allegations were insufficient to state a claim for reckless misconduct because they did not allege any facts beyond those supporting a negligence cause of action. Here, plaintiffs allege that (1) Timex affirmatively concealed the extent of the toxic waste pollution caused by its activities at the facility (Sixth Count, ¶ 5), (2) failed to test facility groundwater for contamination, and (3) failed to take adequate steps to prevent the continuation of that contamination notwithstanding Timex's knowledge of both the dumping and extent of the pollution caused by it (Sixth Count, ¶¶ 4, 6). In the Court's view, plaintiffs have sufficiently alleged facts which, if proved, could demonstrate that Timex's conduct involved an extreme departure from ordinary care in a situation where a high degree of danger is apparent, particularly when some of the wastes at issue are alleged to be carcinogenic and/or radioactive, and that under the circumstances and in light of the conduct alleged, Timex impliedly intended the injury to the environment and plaintiffs' property that resulted from its concealment of both the contamination and their failure to remediate it. *See Dubay,* 207 Conn. at 532, 542 A.2d 711 (intent to cause

resulting injury which constitutes reckless-ness may be implied from conduct and cir-cumstances). Therefore, it cannot be said that plaintiffs can prove no set of facts which would entitle them to relief on their reckless misconduct claim. Accordingly, Timex's mo-tion to dismiss plaintiffs' Sixth Count is de-nied.

## EIGHTH COUNT

Timex contends that plaintiffs' complaint does not allege a claim for nuisance per se in their Eighth Count because they have not alleged a condition which is a nuisance in any locality and under any circumstances. *See Beckwith v. Town of Stratford,* 129 Conn. 506, 29 A.2d 775 (1942) (holding that same conditions may constitute a nuisance in one locality or under certain circumstances, and not in another locality or under other circum-stances). Timex maintains that plaintiffs have failed to allege conditions which would constitute a nuisance in every locality and in all circumstances, for example there would be no contamination of others' property if the plant were located in a middle of the desert. (Defs.' Mem. at 12). Notwithstanding its caption, however, the Eighth Count alleges only that Timex's conduct violated § 19a–337, and thus the nuisance per se analysis of *Beckwith* is inapplicable. Thus, the Court must consider whether plaintiffs have alleged a cause of action under § 19a–337.

■ Plaintiffs allege that Timex willfully deposited materials, including a variety of toxic radioactive and hazardous substances, into a watercourse which has carried and continues to carry those materials to plain-tiffs' land causing injury to the land. Plain-tiffs further allege that Timex has failed to remove those materials within a reasonable time after notice of the injury in violation of Conn.Gen.Stat. § 19a–337.[2] (Eighth Count ¶¶ 5–9). Although Timex contends that plaintiffs' claim should be rejected because plaintiffs allege that their injury is the result of substances released into the groundwater, which is not a watercourse,[3] nowhere in the Eight Count do plaintiffs allege that Timex willfully deposited materials into the ground-water. Rather, they allege Timex deposited materials into a watercourse, which then car-ried those materials to plaintiffs' property. Although plaintiffs contend that they should be allowed the opportunity to prove through discovery that their groundwater has been contaminated as a result of Timex's dumping of hazardous wastes into a watercourse on its property, (Pls.' Opp. at 17), the complaint contains no allegation as to the identity of the watercourse into which plaintiffs intend to prove Timex allegedly dumped wastes. In the absence of any such allegation, the Court concludes that plaintiffs have failed to state a claim under § 19a–337, as their claim is cur-rently pleaded. However, the Court will dis-miss plaintiffs' § 19a–337 claim without prej-udice to allow plaintiffs the opportunity to amend their complaint to identify a qualify-ing watercourse.

## OTHER SUPPLEMENTAL STATE LAW CLAIMS

Defendants argue that plaintiffs' other state law claims should be dismissed because they predominate over plaintiffs' one federal claim seeking response costs under CERC-LA. Under 28 U.S.C. § 1367(c)(2), a court is

**2.** Section 19a–337 provides: "Any person who willfully deposits material in any watercourse where it will naturally be carried to the land of another to his injury shall pay to the party in-jured thereby double damages and costs, unless, within a reasonable time after notice of the inju-ry, he removes such material from such land."

**3.** Conn.Gen.Stat. § 22a–38 defines watercourse as "rivers, streams, brooks, waterways, lakes, ponds, marshes, swamps, bogs and all other bod-ies of water, natural or artificial, vernal or inter-mittent, public or private, which are contained within, flow through or border upon this state or any portion thereof, not regulated pursuant to sections 22a–28 to 22a–35, inclusive." Addition-

ally, although the Connecticut Supreme Court has recognized the public policy in favor of pro-tecting and preserving wetlands and water-courses, noting that the wetlands and water-courses of the state are an "interrelated web of nature essential to an adequate supply of surface and underground water; to hydrological stability and control of flooding and erosion; *to the re-charging and purification of groundwater,"* Com-missioner of Environmental Protection v. Connect-icut Bldg. Wrecking Co., 227 Conn. 175, 198–99, 629 A.2d 1116 (1993) (emphasis added), it has not specifically ruled on whether groundwater is considered to be a watercourse.

allowed to decline to exercise supplemental jurisdiction over a state claim where "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." An examination of the considerations surrounding the statutory grounds under which the Court is permitted to decline supplemental jurisdiction, however, results in the conclusion that declining supplemental jurisdiction is inappropriate in this case.

It is apparent that plaintiffs state law claims derive from a common nucleus of operative fact, namely, Timex's storage and dumping of substances at its Middlebury facility and the effect of those actions on the adjacent landowners. It is also evident that plaintiffs' state law claims involve no new or complex issues of state law because they are either established common law causes of action such as strict liability, negligence, nuisance, recklessness, and trespass, or are brought under statutory schemes such as § 22a–452, and § 19a–337. *See Arawana Mills,* 795 F.Supp. at 1248 (CERCLA case rejecting an identical challenge and retaining supplemental jurisdiction over state law claims for breach of contract, specific performance, waste, nuisance, strict liability, CUTPA and recovery of costs under § 22a–452).

Further, defendants assert that plaintiffs' state law claims involve proof and litigation of Timex's culpability beyond the level required by CERCLA, such that those claims cannot be said merely to supplement plaintiffs' CERCLA claim, for example requiring proof as to punitive damages. The Court is unpersuaded, however, because it is irrelevant that the scope of relief under state law differs from that under federal law. *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1050 (2d Cir.1985) (holding that hearing both CERCLA claim and supplemental state law nuisance claim was in interests of judicial economy because they arose from common fact and should be tried together in one proceeding).

This action has been pending in federal court for over a year, which suggests that it would be unfair to require plaintiffs to commence a state court action at this date. Moreover, dismissing plaintiffs' state law claims would necessitate that plaintiffs now pursue two actions—arising from the same nucleus of fact—in different fora, and would require duplicative discovery in order to prosecute those actions. Consequently, the Court cannot say that judicial economy would be well served by dismissing without prejudice plaintiffs' state law claims against Timex and MOP. *See Bernbach,* 989 F.Supp. at 412.

Therefore, the Court concludes that the balance of such factors as judicial economy, fairness, and comity weighs in favor of retaining supplemental jurisdiction over plaintiffs' state law claims. *See Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Accordingly, defendants' motion to dismiss plaintiffs' state law claims is denied.

### SUMMARY

Defendants' Motion to Dismiss [doc. 6] is GRANTED as to plaintiffs' strict liability claim in the Second Count, DENIED as to plaintiffs' reckless misconduct claim in the Sixth Count, GRANTED as to plaintiffs' claim under § 19a–337 in the Eighth Count, and DENIED as to plaintiffs' other state law claims.

IT IS SO ORDERED.